Roger COPLAND, et al., Plaintiffs,

v.

Jack GRUMET, et al., Defendants.

No. Civ.A. 96–3351 MLC.

United States District Court,
D. New Jersey.

Aug. 26, 1999.

Peter S. Pearlman, Cohn, Lifland, Pearlman, Herrman & Knopf, Saddle Brook, NJ, for plaintiff Roger Copland.

Allyn Z. Lite, Lite, DePalma, Greenberg & Rivas, LLC, Newark, NJ, for plaintiffs Henry Billeter, Susan May Lee, David Y. Lee and Christine Overend.

Robert E. Bartkus, Morristown, NJ, for defendants Jack Grumet, Leonard Johnson, Manhattan Bagel Company, Inc., Jason Gennusa and Andrew Gennusa.

Howard Schwartz, Porzio, Bromberg & Newman, Morristown, NJ, for defendants Allan Boren, Debbie Boren and Eric Cano.

## MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the Court on the motion by the class action plaintiffs for leave to file a Third Amended Complaint

including claims against former defendants Allan Boren ("Boren") and Eric Cano ("Cano"). Boren and Cano (hereinafter "moving defendants") oppose the motion. For the reasons stated, the motion is denied.

## BACKGROUND

Because the Court is aware that the parties to this litigation are familiar with the surrounding facts and circumstances of this case, we need not repeat them herein. Instead, the Court refers the parties to our prior Memoranda and Orders entered in this case for a full recitation of the facts pertinent to the underlying dispute. We will, however, provide a brief procedural history to put the instant motion in proper context.

This Court issued a Memorandum and Order dated January 8, 1998 which dismissed claims against the moving defendants based upon (1) §§ 10(b) and 20 of the Exchange Act and Rule 10b–5, and (2) §§ 11 and 15 of the Securities Act. We also granted plaintiffs leave to file a Second Amended Complaint, identifying in the Memorandum which counts could be amended and in what manner.[1] However, we did not specify in the Order portion which counts of the Complaint could be amended. Our Order also stated that the moving defendants' motion to dismiss was granted, but did not specify whether the enumerated claims were dismissed against them with or without prejudice.

Plaintiffs filed a Second Amended Complaint which included, *inter alia,* five counts against the moving defendants based upon alleged violations of: (1) § 15 of the Securities Act (Count I); (2) § 10(b) and Rule 10b–5 of the Exchange Act (Counts II and IV); (3) § 20 of the Exchange Act (Count II); (4) § 20A of the Exchange Act (Count V); and (5) Section 12(2) of the Securities Act (Count III).[2] The moving defendants filed a motion to strike each of those counts from the Second Amended Complaint as well as a motion to dismiss those counts pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). This Court granted the moving defendants' motion to strike, finding that this Court's prior Memorandum and Order had not granted plaintiffs leave to file a Second Amended Complaint which contained new and improved allegations against the moving defendants. (Order dated 5–14–99 at 3.) We also stated that if plaintiffs intended to plead additional allegations and claims against the moving defendants, it would be necessary for plaintiffs to file a formal motion seeking leave to amend their Complaint in that manner. (*Id.* at 4.) In addition, we denied the motions to dismiss as moot. (*Id.* at 6.)

Plaintiffs have now filed a formal motion seeking leave to file a Third Amended Complaint which includes the claims against the moving defendants which were the subject of defendants' motion to strike.[3] The moving defendants have op-

1. Two additional motions were considered in our January 8, 1998 Memorandum and Order: (1) a motion by defendants Manhattan Bagel Co. Inc. ("the Company," "Manhattan Bagel," or "MB"), Jack Grumet, Leonard Johnson, Jason Gennusa and Andrew Gennusa ("the Manhattan Bagel Defendants") to dismiss plaintiffs' Amended Complaint; and (2) a motion to dismiss the Overend Complaint by defendants MB, Grumet and Johnson. We denied both motions, and granted plaintiffs leave to file a Second Amended Complaint with respect to two issues. First, we permitted plaintiffs to amend the Complaint to add a plaintiff as a lead plaintiff. (Mem. & Order dated 1–8–98 (hereinafter "Mem. & Order") at 15.) Second, we permitted plaintiffs to plead additional factual infor-

mation with respect to plaintiffs' claim against the Manhattan Bagel defendants under Rule 10b–5 and § 10 of the Exchange Act. (*See id.* at 18–19.)

2. Counts I and II of the Second Amended Complaint assert claims against, *inter alia,* Boren and Cano. Counts III through V are directed at Boren only.

3. The Court will refer to the Second Amended Complaint as the proposed pleading under consideration in the instant motion, as plaintiffs concede that the Third Amended Complaint, if filed, would be identical in form and content to the Second Amended Complaint filed in April 1998 prior to the Court's decision on defendants' motion to strike.

posed the motion, arguing that the request is untimely. They also claim that we should deny the motion because plaintiffs had not provided them with a copy of the proposed Third Amended Complaint. Finally, the moving defendants argue that if the Court determines that the motion to amend should be granted, they wish to renew their motion to dismiss which we previously dismissed as moot.

Plaintiffs counter that the motion to amend is timely, in that plaintiffs' counsel filed it as soon as counsel became aware of the effect of this Court's ruling on the original motions to dismiss. In other words, plaintiffs' counsel claims that he understood our dismissal of the counts asserted against the moving defendants to have been without prejudice to plaintiffs' right to file an amended complaint curing the pleading inadequacies we identified therein. Moreover, plaintiffs point out that defense counsels' assertion that the motion should be denied because they do not have a copy of the proposed amended pleading is without merit, as they have had notice of the new claims asserted against their clients in the Third Amended Complaint because the claims against the moving defendants which are at issue in the instant motion are the same ones asserted initially in the Second Amended Complaint dated April 8, 1998. (Pls.' Reply Br. at 5 & n. 6.) With respect to the moving defendants' request to renew the motion to dismiss, plaintiffs state that they do not oppose that procedural request, provided that the Court consider their additional letter submitted by their counsel after briefing on that motion had been completed. (*Id.* & n. 7.)

## DISCUSSION

Under Federal Rule of Civil Procedure 15, leave to amend shall be freely given in the absence of bad faith, dilatory motive, undue prejudice to the opposing party, or futility of amendment. *See, e.g., Jablonski v. Pan American World Airways, Inc.,* 863 F.2d 289, 292 (3d Cir.1988). Amendment of a complaint is futile if, as amended, it would not withstand a future motion to dismiss. *Massarsky v. General Motors Corp.,* 706 F.2d 111, 125 (3d Cir.1983), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983).

■ In view of the fact that the Court's January Memorandum and Order admittedly did not specify whether the dismissal of the counts against Boren and Cano was with or without prejudice to plaintiffs' right to file an amended pleading relating to those claims, we find no merit to defendants' argument that the instant motion is untimely. It is clear that once our decision on the motion to strike was filed in this case, plaintiffs reacted in a timely manner. Moreover, there is no evidence of bad faith or dilatory motive on plaintiffs' part in waiting to this point to file the instant motion. Similarly, there does not appear to be undue prejudice to the opposing defendants, as they have been aware since plaintiffs filed the Second Amended Complaint in April 1998 that plaintiffs not only sought to provide additional factual information with respect to those claims dismissed by our Memorandum and Order dated January 8, 1998, but also intended to include new counts against defendant Boren.

The Court notes, however, that as to the last inquiry, that of the futility of amendment, we must determine whether plaintiffs' proposed amended pleading is sufficient to withstand a motion to dismiss pursuant to Rule 12(b)(6). In this connection, we are compelled to analyze the merits of defendants' motion which we dismissed as moot. We will turn our attention to that analysis next.[4] The Court

---

**4.** Because we are deciding whether plaintiffs' allegations are sufficient to withstand a defense motion to dismiss, the Court finds it appropriate to consider in that connection the parties' original papers and supplemental letter briefs submitted in reference to the moving defendants' motion to dismiss which the Court dismissed as moot. Accordingly, any reference to the parties' submissions made in our substantive analysis of plaintiffs' claims should be understood to refer to the parties' papers submitted in connection with that motion unless otherwise noted.

will analyze each proposed claim asserted against the moving defendants and test the allegations pertaining to those counts against the standard of dismissal under Rule 12(b)(6) and 9(b).[5]

## I. Count II: Liability of Boren and Cano under § 10(b) of the Exchange Act and Rule 10b–5

The moving defendants argue that they cannot be exposed to primary liability under § 10(b) and Rule 10b–5 because the gravamen of plaintiffs' allegations against these defendants in this connection is that they were directly involved in the process of creating and reviewing the financial statements of MB's subsidiary, I & J, which contained false and misleading information concerning I & J's 1995 year-end figures. (Pls.' Br. in Opp'n at 6.) Defendants argue specifically that in order to state a claim for primary liability under § 10(b) and Rule 10b–5 of the Exchange Act, plaintiffs must plead facts which show (1) that each defendant made a false or misleading statement, and (2) that the misstatements which are the subject of the action were publicly attributed to that particular defendant at the time of their dissemination. (Defs.' Br. in Supp. at 5–8; Defs.' Reply Br. at 3–4) (citing *Wright v. Ernst & Young*, 152 F.3d 169, 175 (2d Cir.1998).) Defendants also characterize plaintiffs' claim against Boren and Cano to state nothing more than a "corporate mis-management" claim not actionable under § 10(b) and Rule 10b–5.

Plaintiffs counter that in order for liability as a primary violator of § 10(b) and Rule 10b–5 to attach, they need not allege that each defendant made a misrepresentation or false statement which was publicly attributed to the defendant at the time of its dissemination. (Pls.' Br. in Opp'n at 4.) Instead, plaintiffs rely upon a statement in the Second Circuit's opinion in *SEC v. First Jersey Securities*, 101 F.3d 1450, 1471 (2d Cir.1996), which states that "primary liability may be imposed 'not only on persons who made fraudulent representations but also on those who had knowledge of the fraud and assisted in its preparation.'" *Id.* (citing *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 517 (2d Cir. 1994)). They also rely upon *In re Kidder Peabody Sec. Litig.*, 10 F.Supp.2d 398 (S.D.N.Y.1998) and *Carley Capital Group v. Deloitte & Touche*, 27 F.Supp.2d 1324, 1334 (N.D.Ga.1998), opinions decided after our initial dismissal of the § 10(b) and Rule 10b–5 claims, arguing that the cases are factually analogous and instructive as to what level of participation in the making of the misstatements is necessary to establish primary liability under § 10(b) and Rule 10b–5 without offending the Supreme Court's decision in *Central Bank of Denver, N.A. v. First Interstate Bank of Den-*

---

**5.** The standard for dismissal pursuant to Rule 12(b)(6) is well settled. A court may dismiss a complaint pursuant to Rule 12(b)(6) "only if, accepting all alleged facts as true, the plaintiff is not entitled to relief." *Bartholomew v. Fischl*, 782 F.2d 1148, 1152 (3d Cir. 1986) (citations omitted); *Weinstein v. Township of Franklin*, 898 F.Supp. 271, 275 n. 6 (D.N.J.1995). Additionally, all reasonable inferences that can be drawn from the plaintiff's allegations "must be accepted as true and viewed in the light most favorable to the non-moving party." *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir.1987) (citations omitted). This Court may not dismiss a complaint unless the plaintiff can prove no set of facts which would entitle him or her to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

We also note that to the extent that plaintiffs' claims are predicated upon allegations of fraud, we must also consider in this connection Rule 9(b)'s requirements. Rule 9(b) of the Federal Rules of Civil Procedure provides that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R.Civ.P. 9(b). Claims brought under section 10(b) of the Exchange Act must satisfy the particularity requirement of Rule 9(b). *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 286 (3d Cir.), *cert. denied*, 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992).

*ver*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994).[6]

It is clear that plaintiffs' theory of liability under § 10(b) against Boren and Cano is predicated upon their participation in preparing I & J's 1995 year-end financial information, which was then provided to MB and subsequently incorporated into MB's publicly disseminated documents which provided MB's overall financial statistics.[7] (*See* Pls.' Br. in Opp'n to Mot. to Dismiss at 4) (heading under § 10(b) argument is "Boren and Cano Made False and Misleading Statements;" argument presented is that the Second Amended Complaint contains allegations which show that Boren and Cano were "responsible" for falsifying I & J and the Company's financial statements, and that the reported financial statements were "statements" within the meaning of the federal securities laws.); Pls.' Supp.Ltr.Br. dated 1–13–99 (noting that court's opinion in *Carley Capital* recognized that liability may attach to even those upon whom material misrepresentations have not been attributed). Moreover, it is also clear that the alleged actionable misstatements (I & J's financials) were included in the Company's public documents only by incorporation; there were no statements which were attributed to either Boren or Cano directly. With the issue framed as such, we will turn to our analysis of plaintiffs' theory of liability.

 The Second Circuit in *Shapiro* held that a claim under § 10(b) based upon alleged material misstatements or omissions must allege that the named defendant made a material misstatement or omission indicating an intent to deceive or defraud in connection with the purchase or sale of a security. *Shapiro*, 123 F.3d at 720–21. The court made that ruling in the context of a § 10(b) claim asserted against an accounting firm, but that holding does not appear limited to its facts. In addition, the court in *Wright* reaffirmed the holding in *Shapiro*, and went one step further by ruling that in order to hold a secondary actor liable under § 10(b) for alleged misrepresentations, the misrepresentations must be attributed to that specific actor at the time of public dissemination. *Wright*, 152 F.3d at 175.

In contrast to the Second Circuit's rule, plaintiffs argue that this Court should adopt the rule set forth in *Carley Capital*, where the district court held that primary liability under § 10(b) will attach against an individual if that person, acting alone or with others, "creates a misrepresentation even if the misrepresentation is not publicly attributed to it." 27 F.Supp.2d at 1333. The court reached its conclusion based upon the fact that under the Second Circuit's formulation, a "secondary actor who is the actual creator and author of a material misstatement could avoid liability simply due to the concealment of his identity." *Id.*

In the same vein, plaintiffs argue that the district court's opinion in *Kidder Peabody* supports their position. There the court concluded that a plaintiff may pursue a § 10(b) claim against a defendant if the plaintiff can show that the defendants were "the original and knowing source of a misrepresentation and that defendants knew or should have known that that misrepresentation would be communicated to

---

**6.** The Supreme Court's opinion in *Central Bank* eliminated the concept of aiding and abetting liability from the scope of the statute.

**7.** Section 10(b) of the Securities Act makes it unlawful to use or employ, in connection with the purchase or sale of securities, any "manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." Pursuant to Rule 10(b), the SEC adopted Rule 10b–5. Rule 10b–5 makes it unlawful, in connection with the purchase or sale of any security, "(a) To employ any device, scheme or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) To engage in any act or practice, or course of business which operates or would operate as a fraud or deceit upon any person."

investors."[8] *Kidder*, 10 F.Supp.2d at 407. Relying upon the rationale in *Picard Chem. Inc. v. Perrigo Co.*, the court reasoned that GE was the "conduit" through which Kidder's fraudulent misstatements concerning the company's financial status were conveyed. *Id.* at 407–08.

■ This Court previously dismissed plaintiffs' § 10(b) claims against Boren and Cano, ruling that there were no allegations in the pleading that either defendant made a misrepresentation which was the subject of this lawsuit. (Mem. & Order at 35.) While we did not explicitly rely upon the Second Circuit's ruling in *Shapiro*, it is clear that we took the position that in order to be held liable under § 10(b) and Rule 10b–5 for making a material misstatement (or omission), there must be allegations which demonstrate that the particular defendant named in the complaint in fact made a misstatement (or omission). *See Shapiro*, 123 F.3d at 720 ("A claim under § 10(b) must allege a defendant has made a material misstatement or omission indicating an intent to deceive or defraud in connection with the purchase or sale of a security."); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1226–27 (10th Cir.1996); *see also* Mem. & Order at 35–36. The allegations in the proposed pleading fail to meet this standard because plaintiffs' theory is that Boren and Cano participated in the process of "cooking the books" at I & J and generating the allegedly fraudulent I & J financial data, which in turn was included in MB's public documents. However, Boren and Cano's participation in this process cannot be considered the equivalent of *making* the false statements themselves. *See Mishkin v. Ageloff*, No. 97–2690, 1998 WL 651065, at \*16 (S.D.N.Y.1998) (noting that *Shapiro* suggests that "orchestration" of misstatements and omissions is not enough to sustain primary liability, and therefore a plaintiff must allege that each defendant has made a material misstatement or omission in order to be liable under Rule 10(b)). Moreover, we note that the Second Circuit's opinion in *Wright* has added a new consideration, namely that in order to hold an individual liable for material misstatements, the misrepresentations must have been attributable to that specific actor at the time of public dissemination.[9]

It is clear that under *Shapiro* and *Wright*, plaintiffs' allegations concerning

8. The Court notes that the factual circumstances surrounding the individual defendants' involvement in the alleged misrepresentations at issue in *Kidder* are similar to the instant case. General Electric, a publicly held company, had Kidder Peabody ("Kidder") as one of its subsidiaries. During the time period 1991 to 1994, an employee of Kidder engaged in a scheme to generate false profit reports for Kidder. These false figures were incorporated into Kidder's earning statements, which in turn were provided to Kidder's parent, GE. GE, in turn, published Kidder's financial figures in its public documents. After the fraudulent scheme was uncovered at Kidder, it was disclosed to the investing public and GE's stock price suffered as a result. The question presented on plaintiffs' motion for reconsideration was whether Kidder and/or its 4 employees (named defendants in the lawsuit) could be held liable under § 10(b) and Rule 10b–5 for the alleged fraudulent misstatements concerning Kidder's financial figures conveyed to the investing public in GE's public documents (i.e., GE's Annual Report and 10K Report). The court held that the misstatements found in GE's public documents presented actionable misstatements which could be considered in determining Kidder and the 4 employees' liability under § 10(b) and Rule 10b–5.

9. We recognize that this rule of law was pronounced in a slightly different context. Specifically, the facts of that case were that plaintiffs sought to hold an accounting firm, defendant Ernst & Young, liable under § 10(b) for allegedly fraudulent financial information contained in a company's public documents where the defendant firm approved of the figures privately but not publicly. However, there is nothing in *Wright* which indicates that its holding is limited to the facts of that case. Thus, we find its rationale supports our conclusion that Boren and Cano cannot be held liable under the circumstances presented here for alleged material misstatements found in MB's public documents, where there were no "statements" which were attributed to them in the public documents at issue in this case. (*See* Sec. Am.Compl. ¶¶ 37 to 42.)

Boren and Cano's role in formulating, preparing and/or compiling I & J's false financial data are insufficient to hold those individuals liable under the theory that they themselves made a material misstatement actionable under § 10(b). Boren and Cano's conduct in that connection does not amount to actually making a false misrepresentation which can be attributed to them. Indeed, the allegedly false statements concerning I & J earnings, if attributable at all to an entity other than (or in addition to) MB, would be attributable to I & J. Viewing plaintiffs' allegations concerning defendants' role in generating the I & J financial statements at issue under the lens of *Shapiro* and *Wright,* it is clear that plaintiffs have not stated a claim for primary liability under § 10(b) or Rule 10b–5 as to either Boren or Cano.

■ We will briefly address an additional consideration raised by plaintiffs. We are aware of case law which states that "a third-party defendant may be held liable as a primary violator for materially misleading statements made by others where the third-party defendant controlled the content of the statement." Liability is imposed under these circumstances based upon agency principles. "When a defendant controls the content of another actor's statement, the actor is essentially operating as the agent of the defendant, unlike the situation wherein a defendant provides 'substantial assistance' in aiding the actor's individual course of conduct." *Picard Chemical Inc. v. Perrigo Co.,* 940 F.Supp. 1101, 1119 (W.D.Mich.1996). In such circumstances, it is the defendant's original statement which misled investors—the person who communicated the statement to investors served as a mere conduit for defendant's statement. However, even under these circumstances, "the key to determining primary liability is that plaintiff must allege that defendant was the original and knowing source of the misrepresentation." *Id.*

Plaintiffs' protestations notwithstanding, this theory of agency/conduit liability cannot be applied to Boren and Cano in this case, as Manhattan Bagel's public documents cannot be characterized as "conduits" for alleged misstatements attributable to Boren and Cano. At best, MB's public documents served as conduits for material misstatements attributable to I & J, but not Boren and Cano. As alleged participants in a strategy which generated I & J's false financial information, Boren and Cano are one step removed from being the actual speakers of the misrepresentations. Thus, the rationale employed in *Picard* does not support plaintiffs' argument. *Cf. Picard,* 940 F.Supp. at 1120 (where the underwriter defendants argued that there were no material misstatements attributable to them, court denied motion to dismiss, finding that their statements as to the company's growth made in reports to the public demonstrate that they were the "original source" of the fraudulent predictions).

Turning to plaintiffs' final arguments, we do not believe that the courts' opinions in *Kidder* or *Carley Capital* require us to reconsider our understanding of the scope of primary liability for making material misstatements under § 10(b) or Rule 10b–5. We reach that conclusion because we disagree with the holdings and reasoning applied in those cases. First, the district court in *Carley Capital* discussed the Second Circuit's holdings in *Shapiro* and *Wright* but rejected that circuit's holdings in favor of the SEC's position. In the absence of Third Circuit precedent on this point, this Court has adopted the Second Circuit's position, as it is consistent with the Supreme Court's holding in *Central Bank* and faithful to the statutory language of § 10(b).

With respect to the district court's decision in *Kidder,* we agree with defendants that it is likely that the court's holding has been called into question by *Wright.* However, assuming *arguendo* that *Wright* does not affect the validity of the court's ruling in *Kidder,* we do not agree with the district court's holding and reasoning therein. Significantly, we question the outcome in the *Kidder* opinion because the

court did not adequately explain its rationale for exposing not only Kidder (the subsidiary which allegedly misrepresented its financial information to its parent GE), but the individual defendants (employees of Kidder) to liability under § 10(b) for the misleading nature of *Kidder's* financial information eventually reported in GE's public documents. In our view, holding individual defendants liable under § 10(b) for the orchestration of a company's fraudulent financial reports runs afoul of the court's holdings in *Shapiro* and *Anixter* and the notion that only speakers may be held liable for their material misstatements under this aspect of Rule 10b–5 and § 10(b). *See Shapiro,* 123 F.3d at 720–21 ("A claim under § 10(b) must allege a defendant has made a material misstatement or omission indicating an intent to deceive or defraud in connection with the purchase or sale of securities;" court also noted that allegations of "assisting in," "participating in," "complicity in" and similar synonyms fall within the prohibitive bar of *Central Bank* ); *Anixter,* 77 F.3d at 1226 n. 10 ("Some post-*Central Bank* cases have held that third party defendants can be liable for statements made by others, where the defendant substantially participated in preparing the statements. . . . To the extent that these cases allow liability to attach without requiring a representation to be made by defendant, and reformulate the substantial assistance element of aiding and abetting liability into primary liability, they do not comport with *Central Bank.*"); *Mishkin,* 1998 WL 651065, at \*16 ("*Shapiro* strongly suggests that 'orchestration' of misstatements or omissions is not enough to sustain primary liability, and that a plaintiff must allege, as defendant argues herein, that a defendant made a material misstatement or omission in order to be liable under § 10(b)"). Yet, it appears that this is exactly the result which was reached in *Kidder,* although admittedly the court's opinion is ambiguous on this point.

What remains after an exhaustive analysis of the applicable principles surrounding primary liability under § 10(b) for material misstatements is our conclusion that plaintiff's allegations concerning Boren and Cano's "participation in" the creation and review of I & J's false financial statements fail to state a claim upon which relief may be granted. (*See* Sec.Am.Compl. ¶¶ 33 ("Boren participated in the creation and review of I & J's false financial statements."); *id.* ("[Boren] continued to meet and have discussions with Cano . . . and gave . . . instructions concerning the accounting treatment for certain items improperly reflected in [I & J's] year-ended financial statements.").) Accordingly, we will deny plaintiffs' motion to amend the Complaint to add a claim under § 10(b) and Rule 10b–5 against defendants Boren and Cano based upon the alleged misstatements enumerated in ¶¶ 37 to 42 of the Second Amended Complaint as futile under the 12(b)(6) standard for dismissal.

## II. *Control Person Liability against Boren and Cano (Counts I and II)*

Plaintiffs also seek to amend the Complaint so as to hold Boren and Cano liable as "control persons" of MB during the class period. In Count I, plaintiffs allege that Boren and Cano are liable under § 15 of the Securities Act for an allegedly false and misleading registration statement issued by MB in March 1996. In Count II, plaintiffs allege that Boren and Cano are liable under § 20 of the Exchange Act for all of the allegedly misleading statements issued by MB and its officers during the class period. We will discuss the viability of plaintiffs' §§ 15 and 20 claims together.

■ "Control person" liability is predicated upon the theory that certain corporate insiders have the power and obligation to supervise or "control" the day-to-day "policy and decision-making processes" of the persons beneath them who are alleged to have committed the primary wrong. *Riggs v. Schappell,* 939 F.Supp. 321, 327 (D.N.J.1996). Thus, to plead control person liability, the complaint must allege facts which demonstrate that each defendant had the power or potential power to influence and control the activities of the controlled person or entity during the

class period. *See Brown v. Enstar Group,* 84 F.3d 393, 397 (11th Cir.1996) (for defendant to be liable as a control person, he must have had the power to control the company at the time the alleged fraudulent prospectus was issued); *In re Gupta Corp. Sec. Litig.,* 900 F.Supp. 1217, 1243 (N.D.Cal.1994). Furthermore, the Third Circuit requires plaintiffs to allege that the defendants "culpably participated" in the primary wrong. *Rochez Bros. Inc. v. Rhoades,* 527 F.2d 880, 883–86 (3d Cir. 1975), *cert. denied,* 425 U.S. 993, 96 S.Ct. 2205, 48 L.Ed.2d 817 (1976); *Riggs,* 939 F.Supp. at 327.

■ Plaintiffs cannot state a claim for control person liability against Boren and Cano because plaintiffs have failed to plead facts demonstrating that they were controlling persons of the Company within the meaning of sections 15(a) and 20(a). As the moving defendants point out, our prior Memorandum and Order rejected plaintiffs' allegations of control person status against Boren and Cano as "insufficient as a matter of law." (Mem. & Order at 39.) It appears that plaintiffs' control person liability allegations are, in several respects, identical to those which we found deficient.

We reject plaintiffs' assertion of control person liability against Boren and Cano based upon their involvement in the operations of I & J. In essence, plaintiffs raise no new factual allegations demonstrating that Boren and Cano, during the class period, exerted sufficient control over MB's operations such that control liability could be appropriate. (*Compare* Am. Compl. ¶ 38 with Sec.Am.Compl. ¶¶ 39, 48.) We need not reiterate here what we said before with respect to those factual averments, except to note that plaintiffs' allegations could only at best show that Boren and Cano controlled I & J rather than MB.

■ We pause briefly to consider one additional assertion in support of control person liability which was not originally addressed in our prior opinion. Plaintiffs allege that Boren demanded that the other named defendants agree to the registration and sale of Boren's stock in March 1996. The March 1996 Public Offering allowed Boren to sell all 870,000 shares of his MB stock at an artificially inflated price. (Sec.Am.Compl.¶ 39, 48(c)(v).) Specifically, the proposed amended pleading states that Boren threatened MB and its executives that unless they agreed to the Public Offering in March 1996, Boren would sell his stock at a lower price, causing the price of the stock to drop. (*Id.* ¶ 39.) Plaintiffs appear to argue that Boren's threats demonstrate his control over the Company and its officers during the stated time period.

We disagree. First, we note that this allegation pertains only to Boren and thus can have no potential effect on our conclusion regarding the sufficiency of the factual allegations of control liability with respect to Cano. Second, even as to Boren, we find this allegation insufficient to support a claim of control person liability under §§ 15 or 20. Plaintiffs cite no case law, and we are aware of none on point, which would permit this Court to impose control person liability upon Boren under these stated circumstances. Accordingly, we find that amendment of the Complaint to add claims against Boren and Cano based upon control person secondary liability under §§ 15 or 20 would be futile. We will deny the motion to amend with respect to this aspect of the proposed pleading.

*III. Claim under § 12(2) of the Exchange Act—against Defendant Boren*

In Count III of the proposed pleading, plaintiffs contend that Boren is liable under Section 12(2) (now § 12(a)(2)) [10] of the

---

**10.** That section provides in pertinent part:
771. Civil liabilities arising in connection with prospectuses and communications
(a) In general
Any person who—

(1) offers or sells a security in violation of section 77e of this title, or
(2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of

Exchange Act for alleged misstatements found in MB's March 1996 Prospectus and Registration Statement, apparently based upon the theory that Boren "solicited" the March 1996 offering. (*See* Sec.Am.Compl. ¶ 73 ("Defendant Boren solicited the sale of Manhattan Bagel common stock in the March 1996 Offering.").) Boren claims that the allegations pertaining to his status as a statutory "solicitor" under § 12(a)(2) are insufficient as a matter of law. We agree.

■ Count III of plaintiffs' Second Amended Complaint would not survive a motion to dismiss under Rule 12(b)(6) because plaintiffs have not pleaded sufficient allegations pertaining to Boren's status as a statutory "solicitor" under Section 12(a)(2). (*See* Sec.Am.Compl. ¶ 73.) The Supreme Court in *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988), interpreted the scope of the terms "offers or sells" to include one "who successfully solicits the purchase." *Id.* at 644, 108 S.Ct. 2063. The Court held that solicitation liability focuses on "the relationship between the purchaser and the participant." *Id.* at 651, 108 S.Ct. 2063. "Solicitation" under *Pinter* is a term of art, which the Court described variously as the act of "urging" or "persuading" another to purchase securities. *Id.* at 646–47, 108 S.Ct. 2063. The Court rejected the so-called "substantial factor" test for solicitation liability, under which a defendant could be liable if his or her "participation in the buy-sell transaction [was] a substantial factor in causing the transaction to take place." *Id.* at 649, 108 S.Ct. 2063.

■ The allegations in the proposed pleading concerning Boren's status as a statutory solicitor attempt to hold him liable based upon a substantial participation theory squarely rejected in *Pinter*. Plaintiffs state that defendant Boren "was involved in the preparation of" I & J's accounting records, which records were subsequently reflected in the Company's March 1996 Prospectus:

> Defendant Boren solicited the sale of Manhattan Bagel common stock in the March 1996 Offering and was motivated by financial gain to sell shares of Manhattan Bagel common stock in such offering. As set forth above, the March 1996 Registration Statement and Prospectus contained misstatements and omissions of material facts. Also, as set forth above, Boren was involved in the preparation of the false and misleading year-end December 31, 1995 financial statements of I & J (and thus Manhattan Bagel) which were included in the March 1996 Registration Statement and Prospectus and as the primary beneficiary of such offering, has sold 870,000 of the 900,000 shares sold in such offering for proceeds of approximately $20 million. As such, Boren is liable to plaintiffs and the members of the class.

(Sec.Am.Compl.¶ 73.) Plaintiffs' proposed pleading is deficient as a matter of law because it reveals on its face that plaintiffs' theory of solicitation rests upon Boren's participation in producing information about I & J which was incorporated into the 1996 Registration Statement and Prospectus. More importantly, there are no

---

subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof

that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable, subject to subsection (b) of this section, to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security. 15 U.S.C. § 77*l*(a).

allegations of any direct solicitation by Boren of any of the named plaintiffs. *Cf. In re Westinghouse Sec. Litig.*, 90 F.3d 696, 716 (3d Cir.1996); *In re Craftmatic Sec. Litig.*, 890 F.2d 628, 637 (3d Cir. 1989).[11] For these reasons, the Court will deny the motion to amend with respect to this aspect of the proposed pleading.[12]

*IV. Insider Trading Claims pursuant to § 10(b) and Rule 10b–5 and § 20A of the Exchange Act (Counts IV and V)—Against*

*Defendant Boren*

Counts IV and V of plaintiffs' proposed pleading purport to assert two causes of action against defendant Boren for alleged "insider trading." To maintain a private cause of action for "insider trading" under § 20A, a plaintiff must establish that he or she traded "contemporaneously" with the defendant. *See* 15 U.S.C. § 78*l*–1(a). Similarly, courts which have implied a private right of action under § 10 and Rule

10b–5 to recover damages for insider trading also require that a plaintiff have traded "contemporaneously" with the defendant. *See, e.g., Neubronner v. Milken,* 6 F.3d 666, 669–70 (9th Cir.1993) (agreeing with Second Circuit's approach and also stating that the contemporaneous requirement must be pled with particularity under Rule 9(b)).

The text of § 20A does not define the term "contemporaneous." The parties agree that the courts applying the "contemporaneous" requirement under § 10(b) and Rule 10b–5 and § 20A of the Exchange Act are split on the issue of the time period which would satisfy that element of the plaintiffs' prima facie case. Plaintiffs advocate a more flexible approach which would permit the Court to find the requirement satisfied if one of the plaintiffs traded within a few days of the named defendant's market activity. *See, e.g., In re VeriFone Sec. Litig.,* 784 F.Supp. 1471, 1488 (N.D.Cal.1992). Alter-

**11.** We note parenthetically that our ruling in this regard is consistent with the Third Circuit's rulings in *Westinghouse* and *Craftmatic. See Westinghouse,* 90 F.3d at 717; *Craftmatic,* 890 F.2d at 636. In both cases, plaintiffs had alleged that defendants "solicited *plaintiffs* " to purchase stock in the companies at issue. *See Craftmatic,* 890 F.2d at 636 (quoting complaint as stating that "the section 12 defendants are sellers within the meaning of § 12(2) of the Securities Act and either sold or promoted the sale of securities *directly to plaintiffs* ... or *solicited plaintiffs* and other class members to buy such securities.") (emphasis added); *see also Craftmatic,* 890 F.2d at 637 (quoting complaint as stating that "each of the defendants either sold said securities *directly to plaintiffs* ... or *solicited plaintiffs* to buy Craftmatic common stock") (emphasis added). Thus, the Third Circuit found that the plaintiffs had included sufficient allegations of the defendants' active solicitation to satisfy the Supreme Court's ruling in *Pinter* based upon the language in the pleadings which connected defendants' "solicitation" directly to the plaintiffs. In contrast here, plaintiffs allege generally that Boren *"solicited the sale* of Manhattan Bagel common stock in the March 1996 offering and was motivated by financial gain to sell shares of Manhattan Bagel common stock in such offering." (Sec.Am.Compl.¶ 73.) Plaintiffs do not allege, however, that Boren "solic-

ited plaintiffs" to purchase MB stock. The difference in language is significant here because as *Pinter* made clear, there is no liability under § 12(a)(2) for remote sellers. Thus, because the allegations which purport to establish Boren's statutory seller status do not contain any reference to "the relationship between the purchaser and the participant," *see Pinter,* 486 U.S. at 642, 108 S.Ct. 2063, they are insufficient as a matter of law.

**12.** We note that defendant also argues that plaintiffs' § 12(a)(2) claim fails to state a claim upon which relief may be granted because it does not state with sufficient particularity that plaintiff McKillop has standing to pursue such a claim. Defendant argues that the allegation that plaintiff McKillop purchased securities "pursuant to" the March 1996 Registration and Prospectus is insufficient to convey standing to sue under § 12(a)(2). *But see Shapiro,* 964 F.2d at 286 (noting that plaintiffs' allegation that they purchased securities "pursuant to" the company's Registration Statement was sufficient to withstand defendants' motion to dismiss). Defendant also argues that plaintiffs' § 12(a)(2) claim fails to satisfy the pleading standard set forth in Rule 9(b). We need not address these issues, however, as it is clear that plaintiffs' § 12(a)(2) claim is deficient for the reasons expressed in the text and note 11, *supra.*

natively, defendant argues that the Court should adopt the reasoning in those cases which have required that each plaintiff seeking recovery for alleged illegal insider trading to plead that he or she traded on the same day as the defendant in order to meet the contemporaneous requirement.

The parties do not cite, nor has our research revealed, any case law from our Court of Appeals which is instructive on this point. *Cf. In re Advanta Corp. Sec. Litig.*, 180 F.3d 525 (3d Cir.1999) (noting defendants' argument that plaintiffs had not met contemporaneous requirement but finding that dismissal was appropriate on alternative basis such that neither the district court nor the court of appeals addressed whether plaintiffs had provided sufficient allegations of contemporaneous trading under § 20A). After considering the issue of the appropriate interpretation of the contemporaneous requirement in this context, we find persuasive the reasoning applied in the cases cited by defendant. *See, e.g., In re AST Research Sec. Litig.*, 887 F.Supp. 231, 233–34 (C.D.Cal. 1995); *Buban v. O'Brien*, No. 94–0331, 1994 WL 324093, at *3 (C.D.Cal. June 22, 1994); *In re Aldus Sec. Litig.*, 1993 WL 121478 (W.D.Wash.1993) (found in Defs.' App. in Supp. of Boren's Mot. to Dismiss, Ex. A); *In re Stratus Comp. Sec. Litig.*, No. 89–2075, 1992 WL 73555, at *5 (D.Mass. Mar. 27, 1992) (attached to Defs.' App., Ex. C); *cf. In re Cendant Corp. Litig.*, No. 98–1664, 1999 WL 549015, at *23 (D.N.J. July 27, 1999) (court found contemporaneous requirement was satisfied where complaint alleged that certain class representative traded on one of the days that defendant traded, February 21, 1996, as well as the following two days, February 22 and 23, 1996); *Backman v. Polaroid Corp.*, 540 F.Supp. 667, 670 (D.Mass.1982) (court found lapse of 2 trading days between plaintiffs' trading and defendant's activities insufficient to meet contemporaneous requirement). Accordingly, we hold that in order to satisfy the "contemporaneous" requirement applied in insider trading claims under §§ 10(b) and 20A of the Exchange Act, a plaintiff must at this stage plead that he or she bought stock on the same dates on which the defendant's sales took place.

Applying that rule to the factual allegations in the proposed pleading demonstrates that the contemporaneous requirement is not satisfied here. The proposed pleading states that Boren sold stock in the Company on Tuesday, March 19, 1996. (Sec.Am.Compl.¶¶ 43.) However, the pleading does not identify a single plaintiff who purchased MB stock on that date. Although plaintiffs assert that plaintiff McKillop traded "contemporaneously" with Boren, the factual allegations indicate otherwise because the pleading discloses that McKillop did not purchase his stock in the Company until Thursday, March 21, 1996. (*Id.* ¶¶ 6(b), 84.) Thus there are no factual allegations which demonstrate that any of the named plaintiffs traded in MB stock on the same date as Boren. Under these circumstances, plaintiffs' insider trading claims articulated in Counts IV and V are not sufficient to withstand a defense motion to dismiss. Accordingly, we will deny plaintiffs' motion to amend to the extent that it seeks to add Counts IV and V in their present form.

### CONCLUSION

We have determined that the claims asserted against the moving defendants identified in Counts I through V of the proposed pleading cannot withstand a motion to dismiss under Rule 12(b)(6). Accordingly, the Court must deny the motion as futile with respect to the remaining claims. *See Massarsky*, 706 F.2d at 125.

An appropriate Order accompanies this Memorandum Opinion.