**TEAMSTERS LOCAL 617 PENSION AND WELFARE FUNDS, on behalf of itself and all others similarly situated, Plaintiff,**

v.

**APOLLO GROUP, INC., et al., Defendants.**

**No. CIV 06–2674–PHX–RCB.**

United States District Court, D. Arizona.

Feb. 22, 2010.

Christopher M. Wood, Jeffrey W. Lawrence, Coughlin Stoia Geller Rudman & Robbins LLP, San Francisco, CA, Fei–Lu Qian, Marc I. Gross, Pomerantz Haudek Block Grossman & Gross LLP, Jay P. Saltzman, Schoengold Sporn Laitman & Lometti PC, New York, NY, Michael Salcido, James W. Barnhouse, Buckley King LPA, Robert O. Dyer, Polsinelli Shughart PC, Phoenix, AZ, Patrick V. Dahlstrom, Pomerantz Haudek Block Grossman & Gross LLP, Chicago, IL, for Plaintiff.

Brian A. Herman, Morgan Lewis & Bockius LLP, New York, NY, Joseph E. Floren, Morgan Lewis & Bockius LLP, San Francisco, CA, Michael J. Farrell, Steven Charles Lawrence, Jennings Strouss & Salmon PLC, Phoenix, AZ, Peter B. Morrison, Virginia F. Milstead, Eric S. Waxman, Skadden Arps Slate Meagher & Flom LLP, Los Angeles, CA, for Defendants.

## ORDER

ROBERT C. BROOMFIELD, District Judge.

In *Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.*, 633 F.Supp.2d 763 (D.Ariz.2009) (*"Apollo I"*), the court issued a host of rulings pertaining to defendants' motions to dismiss the First Amended Complaint ("FAC") in this securities fraud action. In the pending reconsideration motion (doc. 107), lead plaintiff, Pension Trust Fund for Operating Engineers ("plaintiff"), challenges several aspects of *Apollo I*. First, it asserts that dismissal was improper as to the control person liability claims under section 20(a) of the Securities and Exchange Act of 1934 ("the Exchange Act") as against the following defendants: Daniel E. Bachus; Dino J. DeConcini, Hedy Govenar; Brian E. Mueller; Laura Palmer Noone ("Noone") (collectively "the group one defendants"); John G. Sperling; and Peter Sperling (collectively "the Sperlings"). Relatedly, plaintiff contends that because the FAC sufficiently alleges that each of the group one defendants and the Sperlings had the requisite control over a primary violator, the section 20(a) claims should stand as against each of them. Necessarily then, plaintiff further asserts that the court must vacate the judgments entered in favor of each of the group one defendants. Lastly, if the court finds that the FAC inadequately alleges a section 20(a) control person claim as to any of the group one defendants, still, according to plaintiff, reconsideration is "appropriate[.]" Reply (doc. 111) at 11:3 (emphasis omitted). Plaintiff reasons that because the court dismissed with prejudice the section 20(a) claim against the group one defendants, it must reconsider and grant plaintiff leave to amend in that regard.

Basically, defendants counter that the court should deny plaintiff's motion "in its entirety" because the FAC does not adequately allege "that any of these defendants controlled any purported primary violator of the federal securities laws in connection with Apollo['s] ... alleged stock option backdating practices." Resp. (doc. 110) at 1. Moreover, defendants assert that plaintiff's "promise to cure" the deficient section 20(a) claim is not a proper basis for reconsideration. *Id.* at 10:16.

### Discussion

#### I. Reconsideration Standards

Evidently because the court entered judgment against some but not all of the

moving defendants, plaintiff is relying upon two different rules as the procedural bases for its motion. Pursuant to LRCiv 7.2(g),[1] plaintiff is moving for reconsideration as to all of the moving defendants. As to the group one defendants, in accordance with Fed.R.Civ.P. 59(e), plaintiff also is seeking to have "the Court vacate the judgment[s]" entered against them. Mot. (doc. 107) at 2:1–2. LRCiv 7.2(g) is entitled "Motions for Reconsideration[,]" whereas Fed.R.Civ.P. 59(e) is entitled "Motion[s] to Alter or Amend a Judgment." So on the face of it, plaintiff's distinction between the group one defendants and the Sperlings, based upon entry of judgment, is understandable. Regardless of the procedural vehicle, the legal standards governing plaintiff's motion are the same however.

There is no express provision in the Federal Rules of Civil Procedure for a motion for reconsideration. *See United States v. Comprehensive Drug Testing, Inc.*, 473 F.3d 915, 955 (9th Cir.2006) (Thomas, J., dissenting). "Rather, such motions are creatures of local rule or practice." *Id.* In this action, as just noted, plaintiff is relying upon LRCiv 7.2(g) as the procedural vehicle for this reconsideration motion. "Absent good cause shown," that Rule requires the filing of such motions "no later than ten (10) days after the filing of the order that is the subject of the motion." LRCiv 7.2(g)(2). Where, as here, a timely reconsideration motion is brought pursuant to the Local Rules, it "is construed as a motion to alter or amend a judgment under Rule 59(e)." *See Shapiro v. Paradise Valley Unified,* 374 F.3d 857, 863 (9th Cir.2004) (citations omitted); *see also Carroll v. Nakatani,* 342 F.3d 934,

945 (9th Cir.2003) (Although Rule 59(e) is entitled "Motion to Alter or Amend Judgment," the Ninth Circuit "permits a district court to reconsider and amend a previous order" pursuant to that Rule.)

"The history of Rule 59(e) shows that 'alter or amend' means a substantive change of mind by the court." *Miller v. Transamerican Press, Inc.,* 709 F.2d 524, 527 (9th Cir.1983). "Under Rule 59(e), it is appropriate to alter or amend a judgment if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *United Nat. Ins. Co. v. Spectrum Worldwide, Inc.,* 555 F.3d 772, 780 (9th Cir.2009) (citation and internal quotation marks omitted). Local Rule 7.2(g) in part mirrors that standard. That Rule provides that "[t]he Court will ordinarily deny a motion for reconsideration ... absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g)(1). Irrespective of the grounds, in the end, "[w]hether or not to grant reconsideration is committed to the sound discretion of the court." *In re Fowler,* 394 F.3d 1208, 1214 (9th Cir.2005) (citation and internal quotation marks omitted).

There is a basis for reconsidering *Apollo I* to the extent the court required, as a predicate to stating a section 20(a) claim, that plaintiff plead a primary securities law violation as to each of the defendants. As explained below, however, Rule 12(b)(6) provides the legal framework for the re-

---

1. Defendants construe plaintiff's motion to reconsider pursuant to LRCiv 7.2(g) as directed solely against the Sperling defendants. *See* Resp. (doc. 110) at 3 n. 3. In seeking relief under that Rule, however, plaintiff lists each of the seven dismissed defendants. *See* Mot. (doc. 107) at 2:25–27. Thus, the court does not read plaintiff's motion as narrowly as do the defendants.

mainder of plaintiff's arguments—not the reconsideration standards which defendants repeatedly invoke.

## II. Section 20(a)—Control Person Claim

This court in *Apollo I* reiterated that "to 'prove a prima facie case under Section 20(a), a plaintiff must prove: (1) a primary violation of federal securities law and (2) that the defendant exercised actual power or control over the primary violator.'" *Apollo I*, 633 F.Supp.2d at 827 (quoting, inter alia, *No. 84 Employer–Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945 (9th Cir.2003) ("America West")). In *Apollo I*, this court, *inter alia*, granted the motion to dismiss the section 20(a) claims as against the group one defendants and the Sperlings. The sole basis for that dismissal was failure to "adequately" plead the first element of a section 20(a) claim—"a primary violation of section 10(b)[.]" *See id.* at 828. Given that holding, the court did not address the second prong of control person liability as to those particular defendants.

### A. Primary Violation

Plaintiff asserts that "the court's dismissal of plaintiff's § 20(a) claim was clear error justifying Rule 59(e) relief." Mot. (doc. 107) at 2:10–11 (emphasis omitted). First, plaintiff challenges the court's finding that as a prerequisite to stating a section 20(a) claim, it had to plead a primary securities law violation as to each of the group one defendants and as to each of the Sperlings. Second, plaintiff contends that the FAC adequately alleges that each

of those seven defendants had the "requisite control" so as to state a section 20(a) claim against them. *Id.* at 3:14. Defendants vigorously dispute whether the FAC contains sufficient allegations of control. Tellingly, however, their response is silent as to the first prong for section 20(a) liability. By their silence, the court assumes that defendants concede the validity of plaintiff's position.

■ Even absent such a concession, the court recognizes that in *Apollo I* it erroneously required, as a precursor to control person liability, allegations that each of the defendants individually violated section 10(b). After reciting section 20(a) of the Exchange Act,[2] the Ninth Circuit reiterated that "a defendant employee of a corporation who has violated the securities law will be jointly and severally liable to the plaintiff, as long as the plaintiff demonstrates 'a primary violation of federal securities law' and that 'the defendant exercised actual power or control over the primary violator.'" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir.2009) (citing *America West*, 320 F.3d at 945) (quoting *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir.2000) (quotation marks omitted)) (other citations omitted) (emphasis added). Consistent with the plain language of section 20(a) and the Ninth Circuit case law construing it, it stands to reason that although control person liability under that statute cannot exist without a primary violation, section 20(a) does not require that the alleged controlling person be primarily liable under section 10(b). *See Paracor Finance, Inc. v. General Electric Capital Corp.*, 96

---

**2.** That section provides:

Every person who, directly or indirectly, controls *any person liable* under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to

whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a) (emphasis added).

F.3d 1151, 1161 (9th Cir.1996) ("The plaintiff need not show the controlling person's scienter or that they culpably participated in the alleged wrongdoing.") (internal quotation marks omitted); *Howard*, 228 F.3d at 1065 (To prove a *prima facie* violation under section 20(a), a "[p]laintiff need not show that the defendant was a culpable participant in the violation, but defendant may assert a 'good faith' defense.") (citations omitted). That is so because section 20(a) "premises liability *solely* on the control relationship, subject to the good faith defense." *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th Cir.1990) (emphasis added). Recognizing that a plaintiff need only plead and prove the commission of "a primary violation of federal securities law" generally, and not a "primary violation" by a given defendant, (citations and internal quotation marks omitted), plaintiff is entitled to reconsideration of that issue.[3]

Before proceeding, the court notes that in *In re Amgen Sec. Litig.*, 544 F.Supp.2d 1009 (C.D.Cal.2008), the court did dismiss the section 20(a) control person claims as to certain outside director and non-speaking defendants, "since [it] ha[d] dismissed the § 10(b) claims against them." *Id.* at 1037–1038. The *Amgen* court did not cite any support for its holding, however; and, as the preceding discussion makes clear, *Amgen* is an aberration.

Notwithstanding the foregoing, defendants contend that reconsideration is not warranted because it will not change the outcome. The outcome will not change, defendants argue, because the FAC does not sufficiently allege that any of them exercised actual power or control over a primary violator—the second element of a section 20(a) claim. Hence, they reason

that the *Apollo I* order granting dismissal of the section 20(a) claims and entry of judgment as to the group one defendants should still stand, albeit for a different reason than articulated in *Apollo I*.

Plaintiff strenuously disagrees. Plaintiff's position is that the FAC sufficiently alleges the exercise of actual power or control by each of the group one defendants, and by the Sperlings. Therefore, the court must reinstate the section 20(a) claims.

The Sperlings are in a different procedural posture than the group one defendants. Thus, as to the Sperlings, presently there is no need to address the issue of whether the FAC adequately alleges control for section 20(a) purposes—a fact which plaintiff and the Sperlings did not take into account. In *Apollo I, inter alia,* this court granted with prejudice the group one defendants' motion for dismissal of the section 20(a) claims. *Apollo I,* 633 F.Supp.2d at 834. Pursuant to Fed. R.Civ.P. 54(b), the court also ordered that judgment be entered in favor of that group of defendants. *Id.* at 832–834. In contrast, this court granted the Sperlings' motion to dismiss the section 20(a) claims *without prejudice. Id.* at 834, ¶ (10). Moreover, the court also expressly granted plaintiff leave to file a second amended complaint ("SAC") as to the Sperlings, among other defendants. *Id.* at 834, ¶ (14).

Plaintiff timely filed a SAC wherein, *inter alia,* it added allegations as to the Sperling defendants purported control. *See, e.g.,* SAC (doc. 112) at 70–71, ¶ 161. In light of the foregoing, the court denies as moot the plaintiff's motion for reconsideration as to the Sperlings. *See Struggs v.*

---

**3.** At this juncture, the court is reminded of Justice Frankfurter's astute observation that "[w]isdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union Planters Nat. Bank & Trust Co.,* 335 U.S. 595, 600, 69 S.Ct. 290, 93 L.Ed. 259 (1949) (Frankfurter, J., dissenting).

*Evans,* 2008 WL 5068522, at *1 (N.D.Cal. 2008) (denying as moot motion for reconsideration, even as to claims dismissed with prejudice, where plaintiff, in his original motion, also was granted leave to amend); *see also Valentine v. First Advantage Saferent, Inc.,* 2008 WL 4367353, at *1 (C.D.Cal.2008) (reconsideration motion filed simultaneously with motion to amend motion rendered moot by granting leave to amend). Indeed, because the SAC superseded the FAC, at this point it would be improper for the court to consider the sufficiency of the FAC's allegations of control person liability against the Sperlings. *See Loux v. Rhay,* 375 F.2d 55, 57 (9th Cir.1967) ("The amended complaint supersedes the original, the latter being treated thereafter as non-existent."); *Bullen v. De Bretteville,* 239 F.2d 824 (9th Cir.1956) ("It is hornbook law that an amended pleading supersedes the original, the latter being treated thereafter as non-existent.")

In contrast to the Sperling defendants, the claims against the group one defendants were dismissed with prejudice, including the section 20(a) claim, and judgment entered in their favor. Pursuant to Fed.R.Civ.P. 59(e) and LRCiv 7.2, plaintiff had ten days in which to move for reconsideration. In *Apollo I,* however, the court granted plaintiff 30 days in which to file a second amended complaint ("SAC"). Anticipating that it would prevail on this reconsideration motion in its entirety, plaintiff's SAC includes allegations even as to the group one defendants against whom judgment was previously entered. *See* SAC (doc. 112) at 70, n. 9. Plaintiff's anticipatory amendment does not preclude their reconsideration motion. Accordingly, as to the group one defendants the court must determine whether the FAC alleges control so as to state a section 20(a) claim against each of them.

### B. Exercise of Actual Power or Control

Before examining the sufficiency of the FAC's section 20(a) claims against each of the group one defendants and the Sperlings, the court must address three preliminary but significant issues. First, it must determine the applicable pleading standards for a section 20(a) control person claim. Second, the court must decide whether, as defendants repeatedly assert, a control person claim must include allegations of "actual participation." Third, the court must consider the impact, if any, of the signing of allegedly false financial statements upon the control person liability analysis. The court will address these issues seriatim.

#### 1. Pleading Standards

In *Apollo I* this court was confronted with the issue of whether Rule 8 or Rule 9 supplies the governing pleading standards for loss causation. *See Apollo I,* 633 F.Supp.2d at 813–814. Once again, the issue of the applicable pleading standards has arisen, but in a different context than *Apollo I.* The parties have a fundamental disagreement as to the applicable pleading standards for a section 20(a) claim. Plaintiff contends that Rule 8(a)'s notice pleading standards govern. Subsection (2) of that Rule merely requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed.R.Civ.P. 8(a)(2). On the other hand, defendants contend that the " 'heightened pleading standard' " of the Private Securities Litigation Reform Act of 1995 ("PSLRA") governs. Resp. (doc. 110) at 5:2–3. Among other things, the PSLRA "requir[es] that a complaint plead with *particularity* both falsity and scienter." *In re Vantive Corp. Sec. Litig.,* 283 F.3d 1079, 1084 (9th Cir.2002) (citation omitted) (emphasis added).

Defendants frame their pleading standards' argument strictly in terms of the

PSLRA. Close scrutiny of the cases to which defendants cite reveals, however, that in some the courts applied the pleading dictates of Rule 9(b) rather than those of the PSLRA. For example, in *Howard v. Hui*, 2001 WL 1159780 (N.D.Cal. Sept. 24, 2001), characterizing a section 20(a) claim as "an allegation of fraud[,]" the court held that "a plaintiff must plead the *circumstances of the control relationship* with sufficient particularity to satisfy rule 9(b)." *Id.* at *4 (citations omitted) (emphasis added). Rule 9(b), in turn, requires that when "alleging fraud ..., a party must state with *particularity* the circumstances constituting fraud[.]" Fed. R.Civ.P. 9(b) (emphasis added). In other cases to which the defendants cite, the court jointly invoked Rule 9(b) and the PSLRA. *See, e.g., In re Splash Tech. Holdings, Inc. Sec. Litig.*, 2000 WL 1727377, at *25 (N.D.Cal. Sept. 29, 2000) (citation omitted) ("[T]he complaint must plead the circumstances of the control relationship with particularity[ ]" as "required by 9(b) and [the] PSLRA."). Based upon the cases to which defendants cite, the court interprets their response as asserting that plaintiff's section 20(a) claims must satisfy the more stringent pleading standard of Rule 9(b) and the PSLRA.

■ Regardless of whether based upon the PSLRA or Rule 9(b), as discussed below, none of the cases upon which defendants rely convince the court to apply a "heightened pleading standard" to the section 20(a) claims at issue herein. *See Resp.* (doc. 110) at 5:2 (internal quotation

marks omitted). The court finds defendants' authority unavailing because those cases overlook a fundamental distinction between section 20(a) control person claims and section 10(b) and Rule 10b–5 securities fraud claims.[4] Fraud and scienter—essential elements of a section 10(b) claim—are not elements of a section 20(a) control person claim. That distinction easily justifies applying a heightened pleading standard to a section 10(b) claim, but not to a section 20(a) claim.

The Ninth Circuit has yet to address the issue of whether a section 20(a) claim should be plead in conformity with Rule 9(b), as reinforced by the PSLRA, or in conformity with the notice pleading requirements of Rule 8(a)(2). Additionally, there is a split of authority within the district courts of this Circuit on that issue. The requirement that a plaintiff allege "the circumstances of control with particularity[ ]" for purposes of stating a section 20(a) claim, "is set forth in several district court decisions." *Hayley v. Parker*, 2002 WL 925322, at *9 (C.D.Cal. March 15, 2002) (citing, *inter alia, Howard v. Hui*, 2001 WL 1159780, at *4 (N.D.Cal. Sep. 24, 2001); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 2000 WL 1727405, at *16 (N.D.Cal. Sept. 29, 2000); *In re Oak Tech. Sec. Litig.*, 1997 WL 448168, at *14–15 (N.D.Cal. Aug. 1, 1997)); *see also In re Atmel Corp. Deriv. Litig.*, 2008 WL 2561957, at *11 (N.D.Cal. June 25, 2008) (same).[5]

In more recent years, however, the weight of district court authority within

---

4. Hereinafter these claims will be referred to collectively as "section 10(b)" claims.

5. In *Chan v. Orthologic Corp.*, 1998 WL 1018624, at *8 (D.Ariz. Feb. 5, 1998), this court, too, indicated that in pleading a section 20(a) claim a plaintiff must satisfy Rule 9(b). This court further noted that PSLRA "has strengthened the requirement of Rule 9(b)." *Id.* (citing *Oak Tech.*, 1997 WL 448168, at *3).

Those statements were dicta, however, in that the court went on to discuss the merits of plaintiffs' section 10(b) claims, but not their section 20(a) claims. Moreover, as fully explicated above, in the more than a decade since Chan the case law pertaining to pleading a section 20(a) claim has evolved and changed to the point where now the court is firmly convinced that Rule 8 provides the applicable pleading standard.

this Circuit is to the contrary. *Siemers v. Wells Fargo & Co.*, 2006 WL 2355411 (N.D.Cal. Aug. 14, 2006), upon which the plaintiff herein relies, is representative. There, the defendants argued that because "the complaint sound[ed] in fraud[,]" Rule 9(b) "require[d] the allegations of control to be stated with particularity." *Id.* at *14 (citation omitted). Stressing that Rule 9(b) "requires only that 'the circumstances constituting fraud ... shall be stated with particularity[,]'" the *Siemers* court rejected that defense argument. *Id.* The court soundly reasoned:

> The control exerted by [defendant] is not a circumstance that constitutes fraud. Plaintiff is only required to assert fraud with particularity as to primary violations. At the control-person level, liability exists irrespective of the control person's scienter.

*Id.* (citing *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th Cir.1990) ("[W]e hold that a plaintiff is not required to show 'culpable participation' to establish that a broker-dealer was a controlling person.... The statute does not place such a burden on the plaintiff.")) Thus, the *Siemers* court expressly declined to adopt the contrary view of cases such as *Hui*, to which the defendants herein cite. *Id.* ("To the extent *[Hui]* held that ..., control must be alleged with particularity, this order respectfully disagrees.")

*Siemers* is the basis for several other decisions within this Circuit, concluding that "[b]ecause claims based on control person liability do not directly touch on circumstances that constitute fraud, Rule 9(b) does not apply to Plaintiff's claims of control person liability[.]" *In re Wash. Mutual, Inc.*, 259 F.R.D. 490, 504 (W.D.Wash.2009) (citing *Siemers*, 2006 WL 2355411, at *14); *Fouad v. Isilon Systems, Inc.*, 2008 WL 5412397, at *12 (W.D.Wash. Dec. 29, 2008) (expressly applying "Rule 8['s] notice pleading standard" to plaintiffs'

control person liability claims based upon the reasoning in *Siemers* ); *In re LDK Solar Sec. Litig.*, 2008 WL 4369987, at *12 (N.D.Cal. Sept. 24, 2008) (same); *see also In re Countrywide Fin. Corp. Sec. Litig.*, 588 F.Supp.2d 1132, 1201 (C.D.Cal.2008) (quoting *LDK Solar*, 2008 4369987, at *12) ("'Although the circumstances of the primary violators' fraud must be pled with particularity under Rule 9(b) [and the PSLRA], the control element is not a circumstance that constitutes fraud and therefore need not be pled with particularity.'")

Although it did not mention *Siemers*, in *Batwin v. Occam Networks, Inc.*, 2008 WL 2676364 (C.D.Cal. July 1, 2008), the court similarly reasoned "that a § 20(a) claim need not be pled in accordance with Rule 9(b) or the PSLRA because scienter and fraud are not elements of such a claim." *Id.* at *24 n. 17 (citing, *inter alia, In re Initial Pub. Offering*, 241 F.Supp.2d 281, 396 (S.D.N.Y.2003)). Instead, the *Batwin* court expressly held that control person liability claims "must be pleaded in accordance with Fed.R.Civ.P. 8(a)(2), requiring that the plaintiff provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at *24 (citing, *inter alia, Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F.Supp.2d 163, 190 (S.D.N.Y.2006)).

Of the two lines of cases just discussed, in this court's view, the *Siemers* line is the more soundly reasoned because they recognize that scienter and fraud are not elements of a section 20(a) claim. The cases upon which the defendants rely fail to make that crucial distinction, as will soon be readily apparent. Further, as will also be seen, applying a heightened pleading standard to a section 10(b) claim but not to a section 20(a) claim fully comports with the PSLRA's plain language and its underlying purpose.

Quoting at length from *In re Tyco Int'l, Ltd.*, 2007 WL 1687775 (D.N.H.2007), defendants assert that a plaintiff "must plead *specific facts* demonstrating that Defendants exercised *actual* power or control over the primary violation in relevant respects." Resp. (doc. 110) at 5:23–25 (emphasis in original). Significantly, however, the *Tyco* court did not directly confront the issue of which pleading standards apply to section 20(a) control person claims. In fact, in discussing whether plaintiffs sufficiently alleged that a defendant director and major shareholder was a control person, *Tyco* does not mention the pleadings standards of Rules 8 or 9(b), or the PSLRA. Rather, without citing to any legal authority, the *Tyco* court held that plaintiffs' "bare assertions and generalized allegations [we]re simply insufficient to establish that [a former director defendant] exercised control over the company [so as] to sustain plaintiff's control person claims against him." *Tyco*, 2007 WL 1687775, at *8.

In addition to the shortcomings just identified, two other factors undermine the precedential value of *Tyco*. The first is that *Tyco*, a district court within the First Circuit, is not binding on this district court which sits within the Ninth Circuit. *See Dabbas v. Moffitt & Associates*, 2008 WL 686687, at *2 n. 2 (S.D.Cal.2008) (federal cases from outside the Ninth Circuit are "not binding authority" on district courts within the Ninth Circuit). Second, *Tyco* expressly states that it is "NOT FOR PUBLICATION[.]" *Tyco*, 2007 WL 1687775 (emphasis in original). That unequivocal declaration, although not determinative of *Tyco's* precedential value,[6] strongly suggests that such value is rather limited. For all of these reasons, although the defendants in the present action place great credence on *Tyco*, this court does not.

Defendants' reliance upon Hui also is misplaced, but for different reasons. Initially, as already explained, the court disagrees with the basic premise of *Hui*, which is that a "section 20(a) claim is an allegation of fraud[,]" and thus is governed by Rule 9(b)'s particularity requirement. *See Hui*, 2001 WL 1159780, at *4 (citation omitted). Furthermore, the two cases to which the *Hui* court cites—*Oak Tech.*, 1997 WL 448168, and *In re GlenFed, Inc. Sec. Litig.*, 60 F.3d 591 (9th Cir.1995)—do not persuade this court that Rule 9(b)'s particularity requirement applies to the section 20(a) claims at issue herein. Despite mandating that the " 'control relationship' be pled with particularity, in accordance with Rule 9(b)[,]" critically, as the *Batwin* court astutely noted, the court in *Oak Tech.* "did not explain the basis for th[a]t requirement." *Batwin*, 2008 WL 2676364, at *24 n. 17.

The *Hui* court's reliance upon *GlenFed* is equally tenuous. Despite what Hui implies, the Ninth Circuit in *GlenFed* "did not require that all allegations of control be set forth with particularity." *See Siemers*, 2006 WL 2355411, at *14. "Instead," the *GlenFed* Court "held that plaintiffs could not rely on a theory of group-published information to hold outside directors liable for misleading statements issued by the corporation unless the plaintiffs pleaded the outside directors' involvement in the day-to-day operations of the corporation with particularity." *Id.* In *GlenFed*, "whether or not the directors were involved in day-to-day operations was a circumstance determinative of whether or not

---

**6.** The court is well aware that Federal Rule of Appellate Procedure 32.1(a), effective January 1, 2007, states in relevant part, "[A] court may not prohibit or restrict the citation of federal judicial opinions, ... that have been: ... designated as ..., 'not for publication,' ..., or the like[.]"

they committed fraud in the issuance of the statements." *Id.* (citation omitted). Thus, as the court persuasively reasoned in *Siemers*, the "holding of *GlenFed* does not apply to the situation . . ., where," as here, "liability is not dependent upon showing that the control person engaged in fraud." *See id.* In sum, unlike the *Hui* court, this court does not find either *Oak Tech.* or *GlenFed* persuasive on the issue of the pleading standards for a section 20(a) claim.

Likewise, *Splash Technology Holdings*, 2000 WL 1727405, another case to which defendants cite, does not advance their argument that a section 20(a) claim must be pled with particularity. In requiring "the circumstances of the control relationship [to be pled] with particularity[,]" the *Splash Technology Holdings* court simply cited to *Oak Tech. Id.* at *25 (citation omitted). The *Oak Tech.* court offered no rationale whatsoever for its holding though, as mentioned earlier. What is more, the court's pronouncement in *Splash Technology Holdings* was merely dicta in that it was unnecessary to that court's holding. Because the plaintiffs in *Splash Technology Holdings* did not plead a primary violation of the federal securities law, the court found "any discussion of control person liability . . . moot." *Id.* at *26. Therefore, *Splash Technology Holdings*, like the other cases to which defendants cite, is not persuasive in terms of the governing pleading standards for a section 20(a) claim.

The final case to which defendants cite is *In re Digital Island Sec. Litig.*, 223 F.Supp.2d 546 (D.Del.2002), *aff'd on other grounds*, 357 F.3d 322 (3rd Cir.2004). As with *Tyco, Digital Island* is a district court decision outside the Ninth Circuit; hence it is not binding upon this district court. *See Dabbas*, 2008 WL 686687, at *2 n. 2. Moreover, *Splash Technology Holdings* was the primary basis for the court's holding in *Digital Island*, but, as just explained, the *Splash Technology Holdings* court's rationale was weak, to say the least.

To summarize, each of the cases to which defendants cite requires a section 20(a) claim to be pled with particularity. Yet, none of those cases are convincing on the issue of pleading such a claim because they are: (1) not soundly reasoned; (2) outside this Circuit; or (3) both. Consequently, despite defendants' repeated urging, the court will not require a section 20(a) claim to be pled in accordance with either the PSLRA or Rule 9(b).

Indeed, adopting a heightened pleading standard for section 20(a) claims would run afoul of the PSLRA. In enacting the PSLRA, Congress sought to provide "protections to discourage frivolous [securities] litigation." H.R. Conf. Rep. No. 104–369, 104th Cong., 1st Sess. at 32 (Nov. 28, 1995), 1995 U.S.C.C.A.N. 730 at 731. One of those "protections" was to "strengthen[ ] the already-heightened pleading requirements of Rule 9(b)." *Glenbrook Capital Ltd. Partnership v. Kuo*, 2009 WL 839289, at *5 (March 30 2009). Significantly, the PSLRA did not uniformly heighten the pleading standards for all Exchange Act causes of action. The PSLRA explicitly adopted stringent pleading standards for allegations of material misstatements or omissions brought pursuant to 15 U.S.C. § 78u–4(b)(1).[7] The

---

**7.** The PSLRA requires that for "securities fraud actions" alleging "[m]isleading statements and omissions[,]" a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegations regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1) (West 2009)

PSLRA also "[s]pecifically ... imposed strict requirements for pleading scienter[,]"[8] *id.*, which "is an essential element of a § 10(b) or Rule 10b–5 claim." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 n. 15 (9th Cir.2002) (citation omitted).

■ In sharp contrast, the PSLRA is silent as to the pleading standards for section 20(a) control person claims. Unlike section 10(b) claims, however, " 'to establish the liability of a controlling person, the plaintiff does not have the burden of establishing that person's scienter distinct from the controlled corporation's scienter.' " *Batwin*, 2008 WL 2676364, at *24 (quoting *Arthur Children's Trust v. Keim*, 994 F.2d 1390, 1398 (9th Cir.1993)). Therefore, it is logical and wholly consistent with the PSLRA to find, as did the *Batwin* court, that for a section 20(a) cause of action, where scienter is not an element, the PSLRA's heightened pleading standards do not apply. *See id.*, 2008 WL 2676364, at *24 n. 17 (citations omitted).

Lastly, "the legislative history of the PSLRA, ... specifies that its heightened pleading standards *only apply* to 'securities *fraud*' claims." *Initial Pub. Offering*, 241 F.Supp.2d at 397 n. 185 (quoting S.Rep. No. 104–98, at 7, 1995 U.S.C.C.A.N. 679, at 686) (emphasis added). Having found, as this court has, that section 20(a) claims do not sound in fraud, requiring such claims to be alleged in accordance with the PSLRA's heightened pleading standards would conflict with the legislative history of that Act.

For all of these reasons, agreeing with plaintiff, the court holds that section 20(a) control person claims are subject to the more general notice pleading requirements of Fed.R.Civ.P. 8(a)(2). Not only is there case law outlined herein to support this

holding, but, from the court's perspective, that line of cases is more soundly reasoned, and hence more persuasive, than defendants' contrary authority. Accordingly, the court will examine the FAC's allegations of section 20(a) control person liability to determine whether they satisfy the less stringent notice pleading standards of Rule 8(a).

The court's holding that Rule 8 provides the governing pleading standards here seriously erodes defendants' Response, which is cast in terms of the more exacting standards of Rule 9(b) and the PSLRA. Further undermining defendants' response is that it borrows heavily from *Apollo I*. That reliance is misplaced, though, because the pleading deficiencies which defendants stress from *Apollo I* were in the context of scienter. And, as should be abundantly clear by now, from this court's standpoint, scienter is not an element of a section 20(a) claim. Hence, the section 20(a) claims which the FAC alleges are not subject to the more exacting pleading standards of Rule 9(b) and the PSLRA.

### 2. *Actual Participation*

Defendants fare no better with their argument that plaintiff must plead "actual participation" to satisfy the second element of a section 20(a) control person claim. Quoting from *Burgess v. Premier Corp.*, 727 F.2d 826 (9th Cir.1984), defendants repeatedly state that "[t]here must be some showing of *actual participation* in the corporation's operation or some influence before the consequences of control may be imposed[ ]" under section 20(a). Resp. (doc. 110) at 2:5–7; 4:20–22; 12:23–25; 13:21–23; 14:5–7; and at 15:22–16:1–3 (emphasis added). Primarily due to an intervening change in the law since *Burgess*, that statement evinces a basic mis-

---

8. "Under the PSLRA, a complaint must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.' " *Glenbrook Capital*, 2009 WL 839289, at *5 (quoting 15 U.S.C. § 78u–4 (b)(2)).

conception as to control person liability-at least at the pleading stage. *See Howard,* 228 F.3d at 1065 (showing of an "effective lack of participation" and lack of scienter entitles defendant to good faith defense to control person liability claim).

■ *Burgess* was decided prior to *Hollinger. Id.* at 1066. "Prior to *Hollinger,* it was clear that a plaintiff needed to show actual participation to make out a prima facie § 20(a) case in this circuit." *Id.* (citation omitted). Hollinger "shifted the burden to the defendant[,]" however, "to show that she acted in good faith and did not directly or indirectly induce the violations." *Id.* (citation and internal quotation marks omitted). Consequently, despite defendants' contrary assertions, "it is *not necessary to show actual participation* or the exercise of power[ ]" to make out a *prima facie* § 20(a) claim in the Ninth Circuit. *Id.* (emphasis added). So, rather than focusing on defendants' alleged actual participation, this court must look to allegations of their "participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions." *See Apollo I,* 633 F.Supp.2d at 827 (quoting *America West,* 320 F.3d at 945).

### 3. *Signing Allegedly False Financial Statements*

Plaintiff's sole basis for moving for reconsideration as to defendants other than the Sperlings [9] is that they "were all officers and directors who *'signed'* false financial statements[.]' " Mot. (doc. 107) at 3:18–19. According to plaintiff, the foregoing "qualif[ies] [defendants] as control persons under" *Apollo I. Id.* at 3:19–20 (citations

omitted). There are factual and legal flaws with this proposition.

First, plaintiff reads *Apollo I* too broadly. In *Apollo I,* this court did not, as plaintiff strongly implies, hold that signing false financial statements, absent *any* other allegations, suffices to allege control under section 20(a). This court simply reiterated that "there is 'persuasive authority indicat[ing] that an officer or director who has signed false financial statements containing materially false and misleading statements qualifies as a control person.' " *Apollo I,* 633 F.Supp.2d at 828 (quoting *Amgen,* 544 F.Supp.2d at 1037 (in turn, collecting cases)). The court in *Apollo I* did not further discuss that proposition because it was unnecessary to the holdings therein.

Second, there is no factual basis for plaintiff's argument. Plaintiff cites to paragraphs 156–182 of the FAC as the factual underpinning for this argument. *See* Mot. (doc. 107) at 3:18. On the face of it, none of those paragraphs pertain to the section 20(a) control person claims; rather, they allege section 10(B) and Rule 10b–5 violations. Moreover, close examination of paragraphs 156–182 reveals that they do not include allegations that any of the defendants signed any documents—financial statements or otherwise. Nor does the FAC contain allegations elsewhere that any of the defendants signed any documents. So, even assuming *arguendo* that the signing of a false financial statement by an officer or director suffices to plead a section 20(a) claim, the FAC does not include such allegations as to any of the defendants. Plainly then, defendants' purported signing of false financial statements

9. As to the Sperling defendants, plaintiff also argues that because the FAC alleges that they "control over 99% of Apollo's voting stock[,]" they are control persons. Mot. (doc. 107) at 3:14–15 (citation omitted). Defendants retort that "stock ownership does not establish con-

trol[.]" Resp. (doc. 110) at 10:27 (emphasis omitted). The court will leave this argument for another day given its finding that this reconsideration motion is moot as to the Sperlings.

is not a basis for reinstating the section 20(a) claims as against them.

Although it disagrees with plaintiff's proffered basis for finding that the FAC sufficiently alleges control within the meaning of section 20(a), the court will *sua sponte* examine the sufficiency of the FAC's allegations in that regard as to each of the defendants. The court is proceeding in this way because in *Apollo I* it did not reach the issue of whether the FAC sufficiently alleges the exercise of actual power or control over a primary violator by each of these defendants.

Proceeding in this way does not prejudice defendants. Upon the filing of plaintiff's reconsideration motion, pursuant to LRCiv 7.2(g)(2), the court ordered that in responding, defendants were to "address the issue of whether the [FAC] sufficiently alleges that each of them exercised actual power or control over the primary violation for purposes of asserting control person liability under [s]ection 20(a) of the . . . Exchange Act[.]" [10] Doc. 108 at 2:4–8. Defendants thus were notified of the possibility that upon reconsideration the court would examine the control element of a section 20(a) claim, and they tailored their response accordingly.

To summarize, in scrutinizing the FAC's allegations of control as to each of the defendants, Rule 8's notice pleading requirements will apply. The court will not require allegations of actual participation, however. Lastly, the signing of allegedly false financial statements will not factor into the court's analysis of the FAC's control allegations. Against that backdrop, the court will examine the FAC to ascertain whether it sufficiently alleges control so as to state a section 20(a) claim against each of the defendants.

### 4. *Rule 12(b)(6) Standards*

As acknowledged earlier, in *Apollo I* the court improperly dismissed the section 20(a) claims against defendants because the FAC did not allege a primary securities law violation against them individually. Plainly then, in *Apollo I* this court never reached the issue of whether the FAC sufficiently alleges that each of the defendants had the requisite control so as to state a section 20(a) claim against them. Now, for the first time, the court is considering that issue. Therefore, as to this particular control issue, Rule 12(b)(6)'s dismissal motion standards apply, not the more demanding reconsideration standards which defendants invoke.

*Apollo I* includes a recitation of the basic standards governing a Rule 12(b)(6) motion in the post-*Twombly*[11] era. *See Apollo I*, 633 F.Supp.2d at 779. Since *Apollo I*, the Supreme Court decided *Ashcroft v. Iqbal*, 556 U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), which discussed Rule 8(a)(2)'s standards in conjunction with Rule 12(b)(6)'s dismissal standards. Significantly, in *Iqbal* the Supreme Court removed any doubt as to *Twombly's* applicability outside the anti—trust realm. The *Iqbal* Court held that the *Twombly*

---

10. The parties' original control person liability arguments were cursory, to say the least. Three of the seven dismissed defendants did not even mention the sufficiency of the control person allegations against them, making this additional briefing all the more necessary.

11. "In *Twombly*, . . ., the Supreme Court 're-tired' the familiar language derived from *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), which provided 'the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Rick–Mik Enterprises v. Equilon Enterprises,* 532 F.3d 963, 970–971 (9th Cir.2008) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 561, 127 S.Ct. 1955, 1968, 167 L.Ed.2d 929 (2007) (quoting *Conley* )).

standards apply to "all civil actions" pled under Fed.R.Civ.P. 8, not just to antitrust cases. *Iqbal*, 556 U.S. at ——, 129 S.Ct. at 1953 (citations and internal quotation marks omitted). Because *Iqbal* reaffirms the Supreme Court's decision in *Twombly*, *Iqbal* does not alter the standards which this court employed in *Apollo I*. Certain aspects of *Twombly* bear emphasizing though.

As before, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, at 556, 127 S.Ct. 1955). Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing, *inter alia, Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

The Supreme Court in *Iqbal* stressed that *Twombly*'s plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at ——, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). After *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . , on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Twombly*, 550 U.S. at ——, 127 S.Ct. at 1965 (citations and footnote omitted). Thus, "[p]ost-*Twombly*, plaintiffs face a higher burden of pleading facts, and courts face greater uncertainty in evaluating complaints." *al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir.2009).

Engaging in the "context-specific task" of determining whether the FAC states a plausible section 20(a) claim as to any of the remaining defendants, the court is particularly mindful that it must "draw on its judicial experience and common sense." *See Iqbal*, 556 U.S. at ——, 129 S.Ct. at 1950 (citation omitted).

With that clarification, the court will consider the FAC's broad allegations of control, as well as the control allegations specific to each of the defendants. In so doing, the general principles of control person liability outlined in *Apollo I* will continue to inform the court. *See Apollo I*, 633 F.Supp.2d at 827–828.

### a. Control Allegations Generally

Section IV of the FAC, entitled "Defendants' Duties," alleges in relevant part as follows:

> Because of their positions of control and authority as directors or officers of Apollo, each of the defendants was able to and did, directly and indirectly, control the wrongful acts complained of herein. These acts include: (i) agreement to and/or acquiescence in the improper stock practices; and (ii) causing Apollo to file false SEC filings in violation of the U.S. securities laws. Because of their positions with Apollo, each of the defendants had access to adverse non-public information and was required to disclose these facts promptly and accurately to Apollo shareholders and the financial markets but failed to do so.

FAC (doc. 71) at 10, ¶ 32:16–23. Additionally, the FAC alleges that "[e]ach of the defendants participated in the issuance and/or review of the false and/or misleading statements, including the false SEC filings and reports issued to Apollo shareholders." *Id.* at 12, ¶ 34:4–6.

In another section of the FAC pertaining to "defendants' duties" as "to granting

and approving stock option grants," it alleges:

> The individual defendants, because of their positions with [Apollo], possessed the power and authority to control the contents of Apollo's quarterly reports, press releases, SEC filings, and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.,* the market. They were provided with copies of [Apollo's] reports, SEC filings, registration statements and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.

*Id.* at 14:10–18 (emphasis omitted).

#### b. *Daniel Bachus*

As to Daniel Bachus, the FAC alleges that he was Apollo's Chief Accounting Officer ("CAO") and Controller throughout the Class Period. FAC (doc. 71) at ¶ 21. The FAC also alleges that Bachus had "knowledge of material non-public information regarding" Apollo. *Id.* That knowledge allegedly formed the basis for Bachus' sale of Apollo stock for $1.7 million in proceeds during the Class Period. *Id.* Additionally, the FAC states that Bachus "sign[ed] the allegedly false and misleading Forms 10–K and 10–Q[,]" which were filed with the SEC thereby "conceal[ing] Apollo's true financial conditions[.]" *Id.* at 95, ¶ 199.

Instead of analyzing those allegations in terms of a section 20(a) claim, Bachus relies solely upon the court's analysis in *Apollo I.* From Bachus' perspective, that prior analysis "doom[s] the Section 20(a) claim as against him." Resp. (doc. 110) at 16:21. Then, characterizing the preceding allegations as "conclusory[,]" Bachus maintains that the FAC "do[es] not establish [him] as a control person." *Id.* at 16–17 (citation and internal quotation marks omitted). The FAC is deficient in that regard, Bachus contends, because it "does

not allege that his employment position permitted him to maintain any control over Apollo, much less its stock option granting process or its public disclosures." *Id.* Bachus thus argues that the court should adhere to its ruling in *Apollo I,* and continue to hold that the FAC does not adequately allege a section 20(a) claim against him.

Addressing these contentions in order, there is no merit to defendants' recurring argument that because the court in *Apollo I* found many of these same allegations inadequate, it should make the same finding now. In taking this stance, defendants, including Bachus, are conveniently overlooking the context of *Apollo I.* The focus there was scienter—a critical element of a section 10(b) violation—which must be pled in conformity with the heightened pleading standards of Rule 9(b) and the PSLRA. As discussed earlier, those more stringent standards do not apply to section 20(a) claims. Consequently, the court disagrees with defendants that the *Apollo I* rationale applies with equal force to the section 20(a) claims now under scrutiny.

As to Bachus' assertion that the FAC's allegations of control are inadequate because they are "conclusory," he relies solely upon *Tyco, supra. Id.* at 16. The court has already found that *Tyco* is not controlling on several grounds, however. Therefore, obviously *Tyco* cannot provide a basis for finding the FAC's allegations as to Bachus "conclusory."

More significantly, the FAC's factual allegations and the reasonable inferences therefrom "plausibly suggest" that defendant Bachus had the requisite control so as to state a section 20(a) claim against him. *See al-Kidd,* 580 F.3d at 975 (citation and internal quotation marks omitted). The allegation that Bachus signed false and misleading financial statements argu-

ably takes on even more significance given that he was Apollo's CAO and controller. The allegations that he was among the defendants who "had the ability and opportunity to prevent the[ ] issuance" of such statements, among other items, and that he along with others "had the ability and opportunity to ... cause" the allegedly misleading statements "to be corrected[,]" also take on greater significance given Bachus' role as Apollo's CAO and controller. *See* FAC (doc. 71) at 14, ¶ 37. *Id.* Those allegations, in conjunction with the FAC's broader control allegations, such as that each of the defendants' asserted "particip[ion] in the issuance and/or review of the false and/or misleading statements, including the false SEC filings and reports issued to Apollo shareholders[,]" *id.* at 12, ¶ 34:4–6, along with Bachus' position as Apollo's CAO and controller, are sufficient to withstand dismissal at this pleading stage. *See Hayley,* 2002 WL 925322, at *10 (plaintiffs stated a valid section 20(a) claim against outside director defendants despite lack of "allegations of day-to-day oversight," where those defendants, *inter alia,* allegedly "signed the 10–K form that allegedly reflects fraudulent accounting practices[;]" and they had "access to non-public information ... essential to th[e] case[ ]").

In fact, the allegations as to defendant Bachus are strikingly similar to those in *Amgen* which that court found were "sufficient to satisfy the second element of a § 20(a) claim" against four corporate executives. *See Amgen,* 544 F.Supp.2d at 1038. The *Amgen* complaint, like the FAC, alleged that certain executives "signed SEC financial statements during the Class Period." *Id.* (citation omitted). Also much like the FAC, the *Amgen* complaint alleged as follows:

> Defendants held positions of control, and they participated in drafting, preparing, and/or approving public reports and other statements and communications com-

plained of ..., were ... able to and did control the content of various SEC filings, press releases, and other public statements pertaining to the Company during the Class Period[.]

*Id.* (citations and internal quotation marks omitted).

*Amgen* thus provides additional support for the view that, when read together, the FAC's allegations as to defendant Bachus are sufficient to "nudge" plaintiff's section 20(a) claim "across the line from conceivable to plausible." *See Twombly* 550 U.S. at 570, 127 S.Ct. 1955. *Twombly* requires nothing more. "The intensely factual questions surrounding [Bachus'] actual participation in the day-to-day affairs of [Apollo] relate to any good faith defense that [he] may choose to assert in response to Plaintiff['s] allegations." *See In re UTStarcom, In. Sec. Litig.,* 617 F.Supp.2d 964, 979–980 (N.D.Cal.2009) (citing *Howard,* 228 F.3d. at 1065). Development of those issues must await another day. Hence, the court finds that at this juncture the section 20(a) claim against defendant Bachus should be allowed to stand.

#### c.  *Dino DeConcini*

Defendant DeConcini has been an Apollo director since 1981. *See* FAC (doc. 71) at 9, ¶ 26:11–12. DeConcini maintains that because he "was an outside director uninvolved with the day-to-day affairs of [Apollo], and because the Court has already found that [he] was not involved in the stock option backdating process or accounting for stock options, the [FAC] does not sufficiently allege that he is a 'control person.'" Resp. (doc. 110) at 14, ¶ 10–14 (citation and footnote omitted). DeConcini adds that "[g]iven the court's finding" as to the purported stock option backdating, the FAC's allegations of his Audit Committee membership cannot "rescue" plaintiff's control person claim against him. *Id.* at 14 n. 9:23–24 (citation omitted). Defen-

dant DeConcini also stresses the absence of *"any"* allegations showing his " 'actual participation in the corporation's operation or some influence' " by him so that the " 'consequences of control may be imposed.' " *Id.* at 145–6 (quoting *Burgess*, 727 F.2d at 832) (other citation omitted).

None of these arguments are compelling. Defendant DeConcini characterizes the FAC as alleging his "mere[ ]" status as "an outside director during the relevant time period." Resp. (doc. 110) at 14:3–4 (citing FAC at ¶ 26). To be sure, "being an officer or director does not create any *presumption* of control[.]" *Paracor*, 96 F.3d at 1163 (citations and internal quotation marks omitted) (emphasis in original). On the other hand, "director status 'is a sort of red light' indicating the potential for day-to-day involvement in a company." *Fouad*, 2008 WL 5412397, at *12 (quoting *Arthur Children's Trust v. Keim*, 994 F.2d 1390, 1397 (9th Cir.1993)). Moreover, the FAC alleges more than simply DeConcini's position as an outside director. The FAC also alleges that DeConcini was "a member of the Audit Committee[.]" FAC (doc. 71) at 9, ¶ 26:12. As a member of that Committee, allegedly, DeConcini had the following "responsib[ilities] [:]"

> (i) reviewing and discussing the audited financial statements of [Apollo] with management; (ii) discussing with [Apollo's] independent accountants the matters required to be discussed by the Statement of Accounting Standards ...; (iii) receiving and reviewing the written disclosures and letters from its independent accountants ...; (iv) discussing with its independent accountants, the independent accountants' independence; and (v) recommending to the Board ... that the audited financial statements be incorporated by reference into [Apollo's] Annual Reports.

*Id.* at ¶ 40. As an Audit Committee member, the FAC also alleges that "DeConcini caused or allowed the dissemination of the improper public statements described [t]herein." *Id.* at 9, ¶ 26:12–13. Lastly, the FAC alleges that "[b]ased on his knowledge of material non-public information regarding [Apollo]," during the Class Period DeConcini sold over 100,000 shares of Apollo stock for proceeds of $5.7 million. *Id.* at 9, ¶ 26:13–16.

■ Defendant DeConcini's attempt to downplay the significance of these allegations is not convincing. The FAC alleges "traditional indicia" of control by him, such as stock ownership and having a seat on Apollo's Board of Directors. *See America West*, 320 F.3d at 945 (citation and internal quotation marks omitted). The FAC also alleges DeConcini's responsibilities, as detailed above, as a member of Apollo's Audit Committee. The issuance of false and misleading financial statements, and improprieties surrounding Apollo's accounting procedures, is part of the alleged primary violation of stock option backdating. *See Apollo I*, 633 F.Supp.2d at 769–770. Financial statements and Apollo's accounting clearly fall within the purview of the Audit Committee, as the FAC alleges.

What is more, the FAC explicitly alleges that as an Audit Committee member DeConcini "review[ed] and discuss[ed] the audited financial statements of [Apollo] *with management[.]*" FAC (doc. 71) at 15, ¶ 40:15–16 (emphasis added). The allegations of DeConcini's Audit Committee responsibilities, in conjunction with the broader control allegations, sufficiently allege control person status at this motion to dismiss stage. *See, e.g., In re Wash. Mutual, Inc.*, 259 F.R.D. at 509 (denying motion to dismiss control person claims against outside director defendants who served on Audit Committee, Finance Committee, or both, where their committee-related responsibilities were related to the

alleged primary violations) (citing *Fouad*, 2008 WL 5412397, at *10 (same)).

The court is well aware that in *Apollo I* it found that "defendant DeConcini's alleged Audit Committee responsibilities d[id] not create a strong inference of scienter[.]" *Apollo I*, 633 F.Supp.2d at 813. Of course, scienter is an element of a section 10(b) primary violation—not of a section 20(a) control person claim. So although the FAC did not sufficiently allege scienter as to DeConcini, that does not preclude a finding that those same allegations are sufficient for purposes of alleging control under section 20(a).

Likewise, the court's observation in *Apollo I* that "[t]here is nothing linking [Mr. DeConcini] to any aspect of stock option granting or the associated accounting[ ]" does not justify dismissal of the section 20(a) claim against him. *See id.* In responding to plaintiff's motion, Mr. DeConcini places far too much credence in that statement. First, it was made while discussing the sufficiency of the section 10(b) scienter allegations against him. As should be abundantly clear by now, the pleading standards for scienter are far more strict that they are for pleading a section 20(a) claim. Further, because the inquiry at this juncture "revolve[s] around the management and policies" of Apollo, "not around discrete transactions[,]" the court's prior comment is not germane in this context. *See Paracor*, 96 F.3d at 1162 (internal quotation marks omitted).

Finally, as earlier discussed, the lack of allegations of "actual participation" by DeConcini is not a basis for dismissing the section 20(a) claim against him. *See Reese v. Malone*, 2009 WL 506820, at *9 (W.D.Wash.2009) (plaintiffs were "not required to demonstrate actual participation by Defendants or the exercise of power ... to establish derivative liability under § 20(a)) (citation omitted)." The FAC's allegations as to DeConcini, and the rea-

sonable inferences therefrom, signal a level of involvement and control beyond being merely a titular member of the Audit Committee. The allegations concerning DeConcini's "title and responsibilities are sufficient at the pleading stage[ ]" to allege the requisite control for section 20(a) purposes. *See id.* (citations omitted). Thus, as with Bachus, the court finds that the FAC's allegations "nudge" plaintiff's section 20(a) claim against DeConcini "across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. By the same token though, also as with defendant Bachus, the court "recogniz[es] that [DeConcini] will be permitted to develop the nature of Plaintiff['s] proof through discovery and interpose defenses of good faith or lack of participation at a later date." *See Reese*, 2009 WL 506820, at *10.

#### d. Hedy Govenar

The FAC's allegations specifically pertaining to Ms. Govenar are scant. The FAC alleges that she was an Apollo director during the Class Period. FAC (doc. 71) at 8, ¶ 24. It also alleges that Ms. Govenar was a director of the University of Phoenix, an Apollo subsidiary for five years well before the Class Period. *Id.* at 8–9, ¶ 24. Allegedly, "[b]ased on her knowledge of non-public material information regarding [Apollo]," during the Class Period Ms. Govenar sold nearly 80,000 shares of Apollo stock "for proceeds of $3.4 million[.]" *Id.* at 9, ¶ 24:2–4.

Additionally, the FAC alleges that Ms. Govenar was one of two Apollo directors whom the Sperlings appointed to serve on a Special Committee ("SC"). *Id.* at 58, ¶ 93:10–11. That Committee was charged with "oversee[ing] a review of [Apollo's] practices related to stock option grants." *Id.* at 58, ¶ 93:11–13. The FAC vaguely alleges, as discussed in *Apollo I*, that Ms. Govenar was "removed from the SC due to

[an] [unspecified] conflict[ ] of interest[.]" *Id.* at 58, ¶ 13–14. "[U] ltimately [Ms. Govenar] resigned from the Apollo Board." *Id.* at 58,. ¶ 93:14.

Essentially, Ms. Govenar's argument is the same as Mr. DeConcini's. The FAC's allegations of control are inadequate because it "merely alleges that [she] was a[n] ... outside director of Apollo." Resp. (doc. 110) at 13 (citations omitted). Likewise, Ms. Govenar points to the lack of allegations that she "had any control, much less actual control over the day-to-day management of Apollo or was otherwise involved in options granting or reporting processes." *Id.* (footnote omitted). Relying upon *Burgess, supra*, Ms. Govenar also emphasizes her lack of "actual participation" in Apollo's operations. *Id.* at 12.

■ Again, the court disagrees with the proposition that in this Circuit "actual participation" is a necessary predicate to stating a claim under section 20(a). Nonetheless, the court agrees that the FAC does not sufficiently allege a section 20(a) claim against Ms. Govenar. Admittedly, as outlined above, the FAC does include specific allegations regarding Ms. Govenar beyond its broad allegations of control pertaining to all of the defendants. Those specific allegations are not sufficient, even when read with the broad control allegations, to allow plaintiff to proceed on a theory of control person liability against Ms. Govenar.

The allegations as to Ms. Govenar are much like those in *Reese, supra*, 2009 WL 506820, wherein the court granted a defendant's motion to dismiss the section 20(a) control person claim because it was not adequately pled. The *Reese* court held that the complaint did not sufficiently allege a section 20(a) claim because it "stat[ed] only that he was a non-executive member of the [corporate defendant] board of directors ... and served on the Ethics and Environment Assurance Com-

mittee." *Id.* at *9 (citation and internal quotation marks omitted). The court reasoned that those "allegations d[id] not speak to any degree of control over the operations of the corporation and certainly no involvement in its day-to-day activities." *Id.*

Here, the FAC suffers from the same deficiencies with respect to Ms. Govenar. The FAC "do[es] not speak to any degree of control" over Apollo's "operations" by Ms. Govenar, and "certainly no involvement [by her] in [Apollo's] day-to-day activities." *See id.* Aside from her appointment on the SC, in sharp contrast to defendant DeConcini, the FAC does not include any allegations as to Ms. Govenar's responsibilities as an outside Apollo director. The absence of such allegations make it impossible to discern whether Ms. Govenar was responsible for controlling any aspect of Apollo's management or policies.

Further, primarily because of the time frame, Ms. Governar's SC assignment does not save this otherwise deficient section 20(a) claim. As the FAC alleges, that Committee was charged with the discrete task of "oversee[ing] a review of [Apollo's] practices related to stock option grants." FAC (doc. 71) at 58, ¶ 93:11–12. That Committee was formed in late June 2006, in the aftermath of the alleged backdating. This is not a situation, for example, where Ms. Govenar was appointed to a corporate committee charged with promulgating Apollo's policy for granting stock options. Nor are there any allegations that this SC assignment put Ms. Govenar in a position of controlling any aspect Apollo's management or policies. Instead, the SC was charged with reviewing and "investigating" alleged "options misconduct" which had already occurred. *See id.* at 5, ¶ 11:21. As the foregoing shows, the meager allegations in the FAC specific to Ms. Govenar

do not "plausibly suggest" that she had the requisite control so as to state a section 20(a) claim against her. *See al-Kidd,* 580 F.3d at 975 (citation and internal quotation marks omitted). Consequently, the court stands by its prior holding that the FAC does not state a section 20(a) claim against Ms. Govenar, albeit for a different reason than in *Apollo I.*

### e. Brian Mueller

■ The court has little difficulty finding that the FAC does not adequately allege control person status as to defendant Mueller. After joining Apollo in 1987, the FAC twice alleges that Mueller "serv[ed] in a variety of positions, including a variety of executive positions since 1993." FAC (doc. 71) at 9, ¶ 25:7–8; and at 77, ¶ 128:22–24. "Most recently," prior to his January 2006 appointment as Apollo's President, "Mueller held the title of Chief Operating Officer ("COO")[.]" *Id.* at 9, ¶ 25:8–9. As discussed in *Apollo I,* the FAC includes two allegations of "knowingly false statements" by Mr. Mueller as well. *Apollo I,* 633 F.Supp.2d at 812.

Arguing that the court should "confirm" the dismissal of the section 20(a) claim against him, Mueller notes the paucity of allegations as to his "knowledge of stock options[.]" Resp. (doc. 110) at 15:1. Mueller asserts that the foregoing, along with the timing of his Apollo presidency, which began roughly nine months before the end of the Class Period, "cannot be reconciled with Plaintiff's proposition that [he] is a 'control person' for the *entire* class period." *Id.* at 15:3–4 (emphasis added).

There are several glaring deficiencies in the FAC's pleading of section 20(a) control person status as to Mr. Mueller. First, the court agrees with Mueller's assertion that "officers and directors" cannot be found "liable as control persons under Section 20(a) for alleged violations that took place before they assumed their positions."

Resp. (doc. 110) at 14–15, n. 10 (citing, *inter alia, Roberts v. Heim,* 670 F.Supp. 1466, 1487 (N.D.Cal.1987), *aff'd in part on other grounds, rev'd in part on other grounds,* 857 F.2d 646 (9th Cir.1988)). That reasoning is not entirely dispositive of the section 20(a) claim against Mueller though because the FAC alleges that he became Apollo's president during the Class Period, albeit not until near the end of that Period. Nevertheless, due to the lack of factual allegations of control specific to Mr. Mueller, plaintiff has not met its burden of pleading a plausible section 20(a) claim against him.

The lack of specific time frames regarding Mueller's other positions with Apollo further weakens plaintiff's section 20(a) claim as against this particular defendant. Aside from his January 2006 appointment as Apollo's President, the FAC is silent as to whether Mueller held any of those "executive positions" during the Class Period. Further, the FAC does not elaborate as to the nature of those "executive positions," Mueller's responsibilities while he served in those positions, or any specific time frames for that service. Similarly, there is no time frame as to when Mueller was COO and what responsibilities he had as such. The FAC also is silent as to Mueller's responsibilities as Apollo's president. Perhaps he was simply a titular President, or perhaps he was more. There is no way to know from the FAC. The lack of allegations as to Mueller's responsibilities as Apollo's president becomes even more problematic given his relatively short tenure during the Class Period as Apollo's president.

Compounding the pleading deficiencies just identified are the lack of allegations of "traditional indicia" of control by Mr. Mueller. For example, the FAC does not specifically allege stock ownership by Mr. Mueller; nor does it allege that he held a

seat on Apollo's Board of Directors. To be sure, "*Twombly* and *Iqbal* do not require that the complaint include *all facts* necessary to carry plaintiff's burden." *See al-Kidd*, 580 F.3d at 977 (emphasis added). But here, insofar as Mr. Mueller is concerned, the FAC does not allege "plausible grounds to infer the existence of a claim for relief" pursuant to section 20(a). *See id.* (citation and internal quotation marks omitted).

In short, the court adheres to its prior ruling that dismissal of the section 20(a) claim against Mueller is proper, albeit for a different reason than articulated in *Apollo I*. Now, the court finds that the FAC does not adequately allege the control elements of a section 20(a) claim against defendant Mueller.

### f. Laura Palmer Noone

■ As already explained, plaintiff's argument that defendants "were all officers and directors who 'signed' false financial statements," thus qualifying them as control persons is tenuous at best. *See* Mot. (doc. 107) at 3:18–19 (citation omitted). That argument is even more tenuous as to Ms. Noone, though, because the FAC does not allege that she was an officer or director of Apollo. Rather, the FAC alleges that since September 2000, Ms. Noone has been president of the University of Phoenix—an Apollo subsidiary. FAC (doc. 71) at 9, ¶ 28. Thus, assuming *arguendo* that an officer or director who allegedly signs a false financial statement is a control person for § 20(a) purposes, Ms. Noone does not qualify as such because the FAC does not allege that she was an officer or director of Apollo.

What is more, as Ms. Noone persuasively argues, because she was neither an Apollo director nor officer, she "could not have 'controlled' Apollo, including its disclosures, in any way." Resp. (doc. 110) at 12:15–16. The lack of any allegation as to her director or officer status with Apollo,

as distinguished from an Apollo subsidiary, is "dispositive" of the § 20(a) claim against her, Ms. Noone argues. *Id.* (citations omitted).

Her position is well-taken. To illustrate, in *Copland v. Grumet*, 88 F.Supp.2d 326 (D.N.J.1999), plaintiffs sought to amend their complaint to add section 20(a) claims against two officers of a subsidiary on the theory that they were control persons of the subsidiary's parent. *Id.* at 335–336. The *Copland* court reasoned that "at best" plaintiffs' allegations could only show that the officers of the subsidiary controlled the subsidiary, not that they controlled the parent defendant. *Id.* at 335; *see also Brown v. Enstar Group, Inc.*, 84 F.3d 393, 397 (11th Cir.1996) (affirming summary judgment on section 20(a) claim in favor of chairman of subsidiary due to lack of record evidence that he had the power to control the parent when the allegedly fraudulent and misleading prospectus was issued). Unlike *Copland*, the FAC's allegations do not even minimally show that Ms. Noone exercised any measure of control over an Apollo subsidiary, much less over Apollo itself.

The few other allegations as to Ms. Noone described in *Apollo I*, even when taken together with the FAC's general control allegations, provide nothing "more than a sheer possibility" that she is a control person for section 20(a) purposes. *See Iqbal*, —— U.S. ——, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). A "sheer possibility" does not satisfy *Twombly's* plausibility standard. *See id.* Thus, as with defendants Govenar and Mueller, the court finds that the FAC does not adequately plead a section 20(a) claim for control person liability against Ms. Noone.

### III. Leave to Amend

In its motion, plaintiff sought limited relief in the form of having this court

"reconsider [*Apollo I*] and deny defendants Bachus, DeConcini, Govenar, Mueller, Noone and the Sperlings' motion to dismiss the § 20(a) claims against them." Mot. (doc. 107) at 4:27–5:1. The sole basis for that motion is the fact that the court erroneously required plaintiff to allege a section 10(b) primary violation as against each individual defendant as a predicate to a section 20(a) control person claim. In any event, plaintiff also sought "withdraw[al] [of] the Judgment entered in favor of Bachus, DeConcini, Govenar, Mueller and Noone [ ("the group one defendants") ][.]" *Id.* at 5:1–2 (citation omitted).

Plaintiff's reconsideration motion does not explicitly mention amending the FAC as to the section 20(a) claims. Plaintiff does indicate that it is "[m]indful that [*Apollo I*] required [it] to amend [its] Complaint to more particularly alleged the falsity of the alleged misstatements[.]" Mot. (doc. 107) at 3 (citation omitted). Plaintiff then assures that its "forthcoming [SAC] will particularly allege each false and misleading statement 'signed' by defendants that are the subject of this motion." *Id.* But of course the amendments just referenced, and which the court addressed in some length in *Apollo I,* do not pertain to the second control element of a section 20(a) claim. The amendments to which plaintiff is referring are directed strictly at the primary section 10(b) violations. Thus, there is nothing on the face of plaintiff's reconsideration motion suggesting to either the court or the group one defendants that plaintiff intended to amend the FAC regarding control person liability as to any of them.

Plaintiff first made the suggestion of such an amendment in its reply to this reconsideration motion. Plaintiff raised the possibility of amendment by seeking to have the court "*reconsider* the *dismissal* of . . . plaintiff's § 20(a) claims *with preju-*

*dice"* as to the group one defendants. Reply (doc. 111) at 11:6–8 (emphasis added). In urging amendment, plaintiff simply stated that "there has been no showing that any such defects could not be cured by amendment." *Id.* at 11:9. Further, plaintiff notes that "defendants have not contended that any amendment would be futile." *Id.* at 11:16–17. Of course, there would have been no reason for defendants to address those contentions in their response because, as detailed above, plaintiff did not even hint at amendment until it filed its reply. Thus, defendants were not on notice that as part of this motion plaintiff also was seeking leave to amend.

Further complicating plaintiff's belated request for leave to amend is that during the pendency of this motion, plaintiff filed a SAC which includes a section 20(a) claim against the group one defendants. As the SAC candidly notes, plaintiff included those allegations despite being fully aware that in *Apollo I* this court, *inter alia,* had previously dismissed those claims with prejudice and directed entry of judgment thereon. *See* SAC (112) at 70, n. 9. The group one defendants, as well as the other remaining individual defendants and Apollo Group, Inc. then promptly moved for dismissal of the SAC. That motion has been fully briefed and submitted.

This procedural quagmire, which put the court in a somewhat tenuous position, easily could have been avoided. Despite the 30 day deadline for filing the SAC which the court imposed in *Apollo I,* plaintiffs could have sought an extension of that deadline. That would have delayed the filing of the SAC until after resolution of this reconsideration motion. Even after the SAC was filed, the group one defendants also could have sought an extension of time in which to answer or otherwise respond to the SAC, but they did not.

Instead, *all* defendants forged ahead with motions to dismiss the SAC.

Given the unique procedural posture of this case, the court rules as follows. Despite finding that the FAC does not sufficiently allege section 20(a) control person liability against defendants Hedy Govenar; Brian E. Mueller; and Laura Palmer Noone, the court grants plaintiff's reconsideration motion. The court now deems the section 20(a) claims against the three defendants just listed to be dismissed without prejudice and with leave to amend. Necessarily, the Rule 54(b) judgment previously entered in favor of these defendants shall be vacated.

By the same token though, because a SAC has already been filed, that SAC is the operating complaint for purposes of the pending defense motions to dismiss. No other amendment shall be allowed, nor shall any further briefing regarding the SAC be filed unless sought by the court. In other words, whether plaintiff has adequately alleged a section 20(a) claim against defendants Govenar; Mueller and/or Noone is now entirely dependent upon the sufficiency of the allegations in the SAC.

Next, having considered for the first time the sufficiency of the control element of a section 20(a) claim as against defendants Daniel E. Bachus and Dino J. DeConcini, and having found that the FAC does adequately allege such a claim against these two defendants, the court must vacate the judgment previously entered in favor of those defendants. As with the three defendants discussed in the preceding paragraph, because a SAC has already been filed, that SAC is the operative complaint for purposes of the pending motions to dismiss. No other amendment shall be allowed, nor shall further briefing regarding the SAC be filed unless sought by the court.

## Conclusion

For the reasons set forth herein, Lead Plaintiff's Motion to Reconsider Dismissal of Plaintiff's § 20(a) Claim (doc. 107) is DENIED in part and GRANTED in part, as enumerated below:

The court hereby ORDERS that:

(1) Lead Plaintiff's Motion For Reconsideration is DENIED as moot as to defendants John Sperling and Peter Sperling;

(2) Lead Plaintiff's Motion For Reconsideration is GRANTED as to defendants Daniel Bachus; Dino DeConcini; Hedy Govenar; Brian E. Mueller; and Laura Palmer Noone;

(3) The Clerk of the Court is directed to vacate the judgment (doc. 106) previously entered as to the five defendants enumerated in paragraph (2) above; and

(4) *Apollo I*, doc. 105 at 127:10 is *sua sponte* amended to insert defendant Norton for defendant Nelson.